# Pennsylvania Railroad Company *versus* Werner.

1. If a man has got himself, without negligence, into a position of danger, he is not responsible if he makes a mistake of judgment in getting out. A man placed under such circumstances, if he uses his judgment honestly, is not responsible, although he might have done better, if he had acted differently.

2. When points submitted to a court assume certain facts, and conclusions of law are drawn therefrom, which would be correct if the facts were as assumed, it is proper for the court to affirm such points with the qualification, "if the jury find the facts as assumed."

[Pennsylvania Railroad Co. *v.* Werner.]

February 5th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term 1879, No. 129.

Case by Elizabeth Werner and her children to recover damages for the death of her husband, August Werner, alleged to have been caused by the negligence of defendant.

The two tracks of the defendant's railroad cross Erie avenue in the outskirts of Philadelphia.   On the morning of February 24th 1877, the deceased, who was a paper carrier, was observed standing on the crossing about five feet from the east track of the railroad, on which was slowly passing a long train of coal cars.   As soon as the caboose, at the rear of the coal train passed, Werner walked across the east track, and in attempting to cross the west one, was struck by a passing engine coming from the direction in which the coal train was moving, and was instantly killed.   One of the plaintiffs' witnesses, a brakeman on the coal train, testified that he saw Werner standing on the crossing, and that as soon as the caboose of the coal train cleared the crossing he walked across, and that witness called to him to look out, " but he never looked up and went straight on;" and, stated the witness, "I would have done the same thing."   Another brakeman testified, on behalf of plaintiffs : " Werner was looking on the other side when I first saw him after he had passed the caboose.   I can't tell which way the man was looking when he was crossing.   He just looked across and started.   He must have looked up the track, for he started or drew back, but did not get away quick enough.   Werner just got about a step away from the west track ; did not get on it ; he was struck on the right side by the beam of the engine ; it projects beyond the track about one-and-a-half feet."

One of the defendant's witnesses, who was on the engine which killed the deceased, testified : " I saw a man come around from behind the caboose, and step right up in front of the engine.   When he got close to the rail he saw the engine.   He threw up one arm and his body back.   The beam of the engine struck him under the right side of the shoulder.   I could see Werner—the top of his head—just before we got to the crossing.   He had his head somewhat bent ; he was then in motion, moving in a westerly direction to cross the track ; he had a hat or cap on."

Another witness, who was on the engine, testified : " As we approached Erie avenue I saw a man run from the corner or end of the caboose trying to cross the track we were on ; he held his head down, and had some kind of a cap on, and appeared to be muffled up.   As he came to the rail of our track he looked towards the engine and threw himself back, but not far enough to avoid the engine."

It was in evidence that the engine was running at the rate of

[Pennsylvania Railroad Co. v. Werner.]

of above twenty miles an hour. The witnesses who were on the engine testified that the bell was rung. It was not controverted that the whistle was blown. The distance between the east and west tracks was about seven feet. The coal cars overhang the track about eighteen inches. The morning was murky and it was raining.

The defendant submitted the following points :

1. That it was the duty of the deceased, before attempting to cross the defendants' tracks, to stop, look and listen for approaching trains, and the plaintiffs' evidence showing that he failed to take these precautions, his failure was not merely evidence of negligence, but was negligence in itself, and the plaintiffs cannot, therefore, recover.

2. The duty of stopping was the more imperative as the view of the tracks upward was obstructed by a coal train of several hundred feet in length, and the deceased, in passing the rear of the coal train, where he could only see in one direction, and continuing in his course without any attempt at examination, was guilty of negligence, and the plaintiffs are therefore not entitled to recover.

3. The evidence of the plaintiffs establishing the fact that the deceased was warned not to cross the tracks, as an engine was then coming, the deceased was guilty of negligence in not heeding the warning, and the plaintiffs cannot, therefore, recover.

4. The uncontradicted evidence, showing that a whistle was blown before the engine reached the crossing at Erie avenue, the deceased was also guilty of negligence in not regarding that warning, and therefore the plaintiffs cannot recover.

5. If the deceased was deaf, and in consequence of such infirmity failed to hear the warning given to him to stop, he had greater reason for caution in advancing over the tracks, and therefore his failure to stop and look was negligence *per se*, and the plaintiffs cannot recover.

In the general charge the court, Mitchell, J., inter alia, said :

" It is alleged on the part of the defendants that the duty to stop, to look and to listen was not performed by the deceased, and that in addition to that he had not only the chance to have performed his duty in that respect, but that a distinct warning was given to him. You will recollect the testimony of the first witness called, who was the brakeman on the coal train ; he called to him to look out. Now, whether Werner heard that we have no means of knowing. Whether he did not hear it, or whether hearing it, he was under the impression that he would get across, and committed an error of judgment in coming forward, or whether having got into a difficult position—having got between the two tracks—he then was put in a position of having to choose between two evils, and went forward as the least evil of the two, we are not able to say from any positive testimony. In the latter case, of course, that is an exception to

the general rule which I have given you. [If a man has got himself, without negligence, into a position of danger, he is not responsible if he makes a mistake of judgment in getting out. A man put under that pressure, if he uses his judgment honestly, is not responsible, although he might have done better if he had done the other way.]

" The space between the tracks was seven feet, and the overhang, as testified by the parties, was probably not exceeding three feet. There was, therefore, a space of four feet in the centre between those tracks, where a man might stand and be entirely safe from passing trains ; but if you have ever had any experience of standing near a train of cars or a locomotive coming at the rate of twenty-three miles or twenty-four miles an hour, you must remember that it takes a man of pretty steady nerve to stand within a few inches of a locomotive, and the slightest mistake, a mistake of either involuntary starting of the nerves, or of judgment in the distance, may subject a man to the risk of being struck. [Therefore it may be that Mr. Werner, having got out from behind this coal train, found himself between the tracks, in a position of danger, and went forward as the least dangerous alternative that he had presented to him. His action under such circumstances would, of course, not be negligence on his part, but if he got himself into a position of danger by negligence in the first place, he would not be excused by any subsequent danger.] * * * If, therefore, you are satisfied under the testimony that the deceased did not perform his full legal duty of stopping, looking and listening before he crossed, but if you think that, as described by one of the witnesses for the defence, the moment this caboose car of the coal train got beyond the crossing, he darted across without looking up or down the road, that was negligence on his part, and however unfortunate the result, the railroad company cannot be made to pay for it. * * * I have substantially affirmed all the defendants' points, if the jury find the facts as assumed. [I decline to affirm any of them as matters of law."]

The verdict was for plaintiffs for $7000. The defendant assigned for error the refusal to affirm the foregoing points as matter of law, and the portions of the above charge in brackets.

*Chapman Biddle*, for plaintiff in error.—The legal obligation resting upon persons intending to cross the tracks of railroads at highway intersections may be considered as settled in Pennsylvania by numerous and uniform decisions. As thus determined the duty is imperative to stop, look and listen : North Pennsylvania Railroad *v.* Heileman, 13 Wright 60 ; Railroad *v.* Coyle, 5 P. F. Smith 396 ; Pittsburgh, Fort Wayne & Chicago Railway *v.* Dunn, 6 P. F. Smith 280 ; Railroad *v.* Beale, 23 Id. 509 ; Railroad *v.* Weber, 26 Id. 157 ; Gerety *v.* Philadelphia, Wilmington and Baltimore Rail-

[Pennsylvania Railroad Co. v. Werner.]

road, 31 Id. 274; Central Railroad of New Jersey v. Feller, 3 Norris 226; Schultz v. Railroad, 6 W. N. C. 69; Nagle v. The Allegheny Valley Railroad Co., 7 Norris 35. The fact that the view of the west track was obstructed by the passing coal train made the duty of stopping the more imperative: Railroad Co. v. Beale, 23 P. F. Smith 509. If Werner's hearing was in any way impaired he had a greater reason for caution in advancing: Central Railroad of New Jersey v. Feller, 3 Norris 229.

*S. W. Reeves* and *J. Howard Gendell*, for defendant in error.— Werner certainly had "stopped," and in the absence of all evidence on the subject, we must assume that he "looked and listened," for it seems to be well settled that the love of life and the instinct of its preservation are quite sufficient to stand for proof that the deceased took the proper care, until the contrary appears: Railroad v. Rowan, 16 P. F. Smith 399; Railroad v. Hagan, 11 Wright 244; Railroad v. Hall, 11 P. F. Smith 361; Allen v. Willard, 7 Id. 374; and that therefore it is not necessary to prove affirmatively that a person injured when crossing a railroad on a public highway had stopped and looked: Pennsylvania Railroad v. Weber, 22 P. F. Smith 27; Weiss v. Pennsylvania Railroad, 29 Id. 387; Pennsylvania Railroad v. Weiss, 6 Norris 447. Even, although from the uncontradicted evidence it might be inferred that if the traveller had stopped and looked and listened he would have seen the approaching train, it is for the jury to determine the fact: Pennsylvania Railroad v. Weber, 26 P. F. Smith 157; Pennsylvania Railroad v. Weiss, 6 Norris 447. Negligence, as already stated, is the absence of the care which persons of ordinary prudence would exercise under the same circumstances, and we submit that precedent, as well as common sense, teaches us that where a company by its own wrong places a person in a position of danger, he is not negligent if he fails to exercise the coolness and self-possession of a bystander: Johnson v. Railroad, 20 P. F. Smith 357; Delaware, Lackawanna and Western Railroad Co v. Smith, 28 Leg. Int. 101; Warner v. Railroad Co., 6 Phila. R. 537.

Mr. Justice STERRETT delivered the opinion of the court, March 3d 1879.

This is a close case, lying fast by the dividing line between questions of law and of fact. Testimony, tending to prove that the deceased, August Werner, lost his life by the negligence and improper conduct of the employees of the railroad company, was introduced, and, without objection, submitted to the jury, who, by their verdict, have settled that question in favor of the plaintiffs below. It must therefore be assumed as a fact that the company was guilty of negligence. In the court below the defence was

[Pennsylvania Railroad Co. *v.* Werner.]

rested mainly on the ground of concurring negligence on the part of the deceased; and, as to that, the contention now is that under the testimony it was a question of law for the court, and not one of fact for the jury. It was not raised, as is sometimes done, on a motion for a nonsuit, grounded solely on the plaintiffs' testimony, but by a request for binding instructions after the testimony on both sides was closed. The five points submitted by the learned counsel for the company are each based on the assumption that acts of the deceased, constituting contributory negligence, were established beyond reasonable doubt, and the court was asked to say, as matter of law, that the plaintiffs could not recover.

The learned judge who presided at the trial, after fairly presenting the questions of fact raised by the testimony, submitted them to the jury in a very clear and able charge, in which he affirmed the defendants' points, provided the jury found "the facts as therein assumed," but declined to affirm them as matters of law. In the course of his charge, after calling the attention of the jury to the testimony and stating in the most pointed and emphatic terms the duty of the deceased, he proceeded to say, "If, therefore, you are satisfied under the testimony, that the deceased did not perform his full legal duty of stopping, looking and listening before he crossed; but, if you think, as described by one of the witnesses for the defence, the moment the caboose car of the coal train got beyond his crossing, he darted across without looking up or down the road, that was negligence on his part, and however unfortunate the result the railroad company cannot be made to pay for it."

There can be no question as to the fairness of the charge, and its correctness also, unless it be in the refusal to rule the case as a question of law and thus take it from the jury.

When the facts are admitted, or so clearly and conclusively proved as to admit of no reasonable doubt, it is the duty of the court to declare the law applicable to them; but, when material facts are disputed, or inferences of fact are to be drawn from the testimony, it is the exclusive province of the jury to determine what they are. The line of demarcation, in this respect, between the duty of the court and that of the jury should be carefully guarded. While, on the one hand, the court should not permit the jury to disregard or evade its instructions as to matters of law, it should be equally careful not to invade the province of the jury and take upon itself the determination of facts about which there is any dispute.

The first and fifth points of the defendant, above referred to, assume that Werner neglected to take the necessary precautions "to stop, look and listen for approaching trains," before attempting to cross the track; and therefore the plaintiffs could not recover. This was asking the court to do more than the evidence warranted. The undisputed testimony was that he did stop when he came to

the railroad; indeed, he was compelled to do so by the passing coal train.   When first seen by the brakeman, who was on the caboose attached to the train, he was standing in the centre of Erie avenue, a few feet from the eastern side of the track, and there he remained until the coal train passed by.   To conclude that he did not listen while standing there, would require a strained and unnatural inference.   The presumption would rather be that he did listen as well as look.   The love of life and the instinct of self-preservation are too strong to justify the inference that he was heedless all the while, and failed to exercise ordinary care.   The common-law presumption is that every one does his duty until the contrary is proved, and none of the witnesses undertake to say that he did not both look and listen while waiting for the coal train to pass.   It is undoubtedly true that when the plaintiff's own evidence discloses contributory negligence, there can be no recovery; but, if it does not, the burthen is on the defendant to disprove care, and, in such case, the question of negligence is for the jury: Pennsylvania Railroad Co. v. Weber, 26 P. F. Smith 157.   The vice of these points was that they assumed more than was clearly proved.

In the second point it is asserted that "in passing the rear of the coal train where he could only see in one direction," he continued "in his course without any attempt at examination." · In view of all the circumstances as they are presented in the testimony, it could not be safely assumed as an undisputed fact that the deceased did not endeavor to see that the way was clear.   The witness already referred to, after describing the situation and Werner's movements, says: "I would have done the same thing."   Another brakeman, who narrowly escaped being run over by the locomotive, says: "Werner was looking on the other side when I first saw him, after he passed the caboose.   I can't tell what way he was looking, when he was crossing.   He just looked across and started.   He must have looked up the track, for he started or drew back, but did not get away quick enough."

The third point takes it for granted, not only "that the deceased was warned not to cross the tracks, as an engine was then coming," but that he heard the warning and heeded it not.   There is nothing in the testimony that would have justified the court in assuming these as uncontroverted facts.   One of the witnesses testified that he hallooed, "Look out!"   This was done, as the witness says, to warn him of the approaching locomotive; but it would be difficult to say, from the testimony, whether he heard the warning or not, or if he did what he supposed it meant.   Possibly, if Werner had survived, he would say that he heard the warning, and thought it had reference to the coal train, and that he was thus induced to hasten across the track so as to escape danger.   This would be a more reasonable inference than that he heard the warning that a

8 NORRIS—5

[Pennsylvania Railroad Co. *v.* Werner.]

locomotive was coming, disregarded it and pressed on to his own destruction.

The fourth point assumes that the undisputed evidence was that a whistle was blown before the engine reached the Erie avenue crossing; that Werner heard it, but did not regard it. This also would have been an unwarranted assumption of fact on the part of the court. It may well be that the testimony would justify such an inference, but it could not be regarded by the court as an undisputed fact.

The question is not whether the testimony did not point strongly to the conclusion that the deceased was chargeable with contributory negligence in one or more of the particulars stated in the points, but whether there was such conclusive evidence of the facts as would warrant the court in regarding them as clearly established, and declaring, as matter of law, that the deceased was guilty of contributory negligence, and therefore his widow and children could not recover. We are not prepared to say that there were such undisputed facts.

Viewing the question in the light of all the circumstances as they were disclosed by the testimony, it is by no means clear that there was error in refusing an unqualified affirmance of defendant's points. On the contrary, we think that if they had been so affirmed, the learned judge would have invaded the province of the jury and taken upon himself the determination of facts which properly belonged to them. The testimony revealed, as far as was possible, the position and movements of the deceased and the circumstances by which he was surrounded at the time he met his death; and it was for them to find the facts, draw such inferences as were warranted, and, under the direction of the court as to the law, say whether he was chargeable with negligence which contributed to the accident. If the verdict was contrary to the evidence, the only relief was in granting a new trial. This was refused and is not the subject of review here.

Considering the charge as a whole, we think there is no just ground of objection to the portions covered by the first and second assignments of error. When read in their connection with and relation to other parts of the charge they are free from error.

Judgment affirmed.