# Ayers *v.* Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

*Railroads—Negligence—Grade crossings—"Stop, look and listen."*

Where a person approaches a railroad crossing at a time when a freight train is passing on the track nearest to him, and he " stops, looks and listens " until the last car of the freight train has passed, and immediately thereafter, in response to beckoning signals from the watchman on the other side, and without again stopping until the freight train had so far passed as to give him a clear view of the tracks in front of him, crosses over and is struck by an engine on the second track which had been hidden by the freight train, the question of the plaintiff's contributory negligence is for the jury.

MITCHELL, BROWN and FELL, JJ., dissent.

Argued Oct. 23, 1901. Appeal, No. 94, Oct. T., 1901, by defendant, from judgment of C. P. Washington Co., May T., 1901, No. 19, on verdict for plaintiff in case of John Ayers v. Pittsburg, Cincinnati, Chicago & St. Louis Railway Company. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

Verdict and judgment for plaintiff for $4,166.66. Defendant appealed.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was in submitting the case to the jury.

*A. M. Todd,* with him *J. A. Wiley,* for appellant.—The case was for the court: Kraus v. Penna. R. R. Co., 139 Pa. 274 ; Lake Shore, etc., Ry. Co. v. Frantz, 127 Pa. 307 ; Greenwood v. Phila., etc., R. R. Co., 124 Pa. 577.

*R. W. Irwin*, with him *John C. Bane*, for appellee.—The case was for the jury: Penna. R. R. Co. v. Werner, 89 Pa. 59; Penna. R. R. Co. v. Garvey, 108 Pa. 369; Philpott v. Penna. R. R. Co., 175 Pa. 570; Penna. R. R. Co. v. Coon, 111 Pa. 430; Fisher v. Monongahela Connecting R. R. Co., 131 Pa. 292; Phila. & Reading R. R. Co. v. Killips, 88 Pa. 405; Baltimore & Ohio R. R. Co. v. Colvin, 118 Pa. 230; Philadelphia & Reading R. R. Co. v. Boyer, 97 Pa. 91; Peck v. Michigan Central R. R. Co., 57 Michigan, 3; 23 N. W. Repr. 466; Dolan v. Delaware, etc., Canal Co., 71 N. Y. 285; Kissenger v. New York, etc., R. R. Co., 56 N. Y. 538.

OPINION BY MR. JUSTICE DEAN, January 6, 1902:

The plaintiff, a day laborer in the village of Burgetstown, Washington county, left his home about 7 o'clock on the morning of August 18, 1900, to go to his place of work. To reach his destination he took his way along Washington, one of the principal streets of the village, which is crossed at right angles by the two tracks of the defendant railroad company; the street is a much traveled one both by those outside the town and those in it. Ayers was about sixty-two years of age, physically active, with senses of sight and hearing unimpaired. The railroad company maintains an automatic electric signal bell at the crossing, which rings as soon as an approaching train reaches and opens the circuit 2,100 feet from the crossing, and continues to ring for about half a minute, or until the train has passed; this as a warning to those who have reached or are approaching the crossing. In addition, the company maintains a flagman at the crossing whose duty it is to warn persons about to cross of the approach of a train or to signal them that the crossing is clear and can be used without danger. The tracks can be seen from the crossing both east and west for a distance of 900 feet to the east and about 1,300 feet to the west. When plaintiff reached the railroad bed a freight train running east was on the crossing; he stopped and waited until it had passed; while so waiting the flagman signalled him twice to cross. The flagman was on the side of the tracks opposite the plaintiff whose vision to the east was obstructed by the receding freight train on the track next him, but the flagman's view of the track

east was clear.   When the flagman signalled Ayers to cross he at once started, and hurried across without stopping; when he got on the west-bound track the flagman signalled him to go back; at the same instant plaintiff saw a locomotive on the west-bound track coming and about thirty or forty feet from him; it occurred to him it was too late to get back and he made the best effort he could to get across, but the locomotive struck and seriously injured him.   The court left the questions of defendant's negligence and plaintiff's contributory negligence to the jury, who found for plaintiff, and we now have this appeal by defendant alleging error in not giving binding instructions for defendant because of plaintiff's contributory negligence.

Leaving out of view the conduct of the flagman, the plaintiff was unquestionably under all of our authorities guilty of contributory negligence.   He stopped, looked and listened before he put his foot on the roadbed; he saw the freight train running east and waited until it had passed; it then shut off his view to the east and he could not see if a train were approaching from that direction; if he had assumed because he did not see one, no train was approaching, and had attempted to cross and been struck, then he assumed the grave risk of a mere guess and could not recover.   While it is an unbending rule that a traveler must stop, look and listen before crossing at grade the rails of a railroad, it has not been held, that as an invariable rule, he must stop, look and listen when on the tracks or between them; it may be that ordinary care, under exceptional circumstances, would dictate that he should stop on the first track to look for an approaching train on the other, or that he should stop on the space between the two sets of tracks, but no such rule applicable to all cases has ever been announced, nor could it with sound reason be adopted, because both on the tracks and between them are places of peril in greater or less degree.   We have adopted the rule that a traveler at a crossing having once stopped in a place of safety before going upon the road, and there looking and listening, and neither seeing nor hearing danger has then undertaken to cross, yet nevertheless, the fact that he has once exercised care, does not relieve him from the duty of exercising care while in the act of crossing. But what exactly he should then do to absolve himself from negligence must depend on the circumstances of the particular

case. It is per se negligence to not stop, look and listen before going on the tracks; it is not per se negligence not to stop, look and listen after getting on.

Thus far we have discussed the law as if no flagman had been there; plaintiff had stopped in a place of safety although close to the track; he had used his own judgment and concluded that it was dangerous to cross because of the coming freight train; he waited until it had passed; immediately the flagman on the opposite side signalled him twice to cross; he did so without stopping and was struck; the flagman was only about twenty-four feet from him and had the west-bound track in both directions in full view as far as it could be seen; the plaintiff's view was obstructed by the freight train to the east. It may be conceded that if the track had been as visible to him as to the flagman that he could not without negligence have disregarded his own sense of sight and have relied on the mistake or carelessness of the flagman; but plaintiff could not see a train and heard no warning; he knew the flagman was experienced and could see; why should he not cross? He could see no train; the flagman who could see and was placed there to see, in effect, said to him there was none. Under such circumstances we cannot say there was an absence of ordinary care in plaintiff relying on the sight of the flagman when because of the freight train his own could not avail him. The court left the question of contributory negligence on the conflicting testimony to the jury; in this we think there was no error. In discussing this point in the case we have assumed the facts to be as plaintiff alleged them; not that we concur with the jury in their finding, but in determining whether the question was for the jury we must assume facts of which there was any sufficient evidence. The defendant's evidence was flatly contradictory of that given by plaintiff and if it had been believed barred any recovery. We concede that it is a close case, but not closer than Penna. R. R. Co. v. Werner, 89 Pa. 59, and Penna. R. R. Co. v. Garvey, 108 Pa. 369. In this last case we said: "There is evidence that on coming to the tracks with his wife and another woman they stopped, looked and listened and saw no sign of an approaching train and heard no locomotive. They started across the tracks, the women a little ahead of Garvey, they crossing safely. In crossing the fourth track a little behind them he was struck by a passing train and

killed. It cannot be declared as a rule of law that he must stop, look and listen between the different tracks lying close to each other. Indeed to so stop instead of hastening to cross all of them, might have been evidence of negligence. Whether it was less dangerous to move continuously across the tracks than to loiter between them was a question for the jury." This is a closer case than the one before us, for in the case cited no flagman urged the party to cross. To the same effect are Philpott v. Penna. R. R. Co., 175 Pa. 570, and Penna. R. R. Co. v. Coon, 111 Pa. 430.

The general charge clearly submits to the jury the question of the contributory negligence of plaintiff in view of the conduct of the flagman. It is argued by appellant's counsel that this question was practically withdrawn from the jury by the court's affirmance of defendant's sixth point. The point is adroitly drawn and probably was not very closely scrutinized by the court below. The first part of it does apparently conflict with the instruction in the general charge. It asks the court to say that the fact that the company employed a watchman is "only" evidence as to the additional care exercised by it to avoid inflicting injury upon travelers. The significance of the word "only" would in effect render the conduct of the flagman immaterial; but the court in its general charge had correctly instructed the jury directly otherwise. Then the latter part of the point states the law correctly: "that the fact does not in any degree relieve the plaintiff from the exercise of all such caution and prudence as the law imposes upon him nor from the duty to stop, look and listen before attempting to cross defendant's tracks." He did stop, look and listen before attempting to cross, and the jury has found that in view of the fact that he was grievously misled by defendant's flagman he exercised all such prudence and caution as the law imposed upon him. They did not narrow the consequence of the flagman's employment to merely an evidence of additional care on the part of the railroad company. They doubtless found that if the flagman lured a traveler into danger his act must be imputed as negligence to his employer. The inconsistency of the court's unqualified affirmance did defendants no harm; if the verdict had been the other way the plaintiff might well have claimed a reversal. All the assignments of error are overruled and the judgment is affirmed.

MR. JUSTICE BROWN, dissenting:

The affirmance of this judgment by a majority of the court is a deliverance that, if the negligence of a defendant is very gross, the contributory negligence of a plaintiff is no bar to his right to recover. This sets at defiance the authorities that are uniform and startles reason upon which they are founded. That the plaintiff was guilty of contributory negligence, leaving out of view the conduct of the flagman, is concededly clear; but he is to recover because the defendant's employee negligently lured him into danger. If he had looked when he ought to have looked, and could have seen, he would have known that the signal of the flagman that he should come on was a beckon to him to rush into danger and to almost certain death under the wheels of a rapidly approaching locomotive. No prudent man would have heeded such a signal, but would have looked for himself; and yet, under the judgment in this case, for what have heretofore been regarded as legal suicide or injuries resulting from one's own negligence there can be a recovery. The rule to stop, look and listen, when approaching a railroad crossing, has been regarded, and rightly so, as an inflexible one, and the duty to observe it as a personal one, which can neither be delegated to nor assumed by another, except at the risk of him about to cross the tracks. Here the appellant relied upon the flagman; but he was bound to rely upon himself. The flagman may have been negligent, and his negligence may have been the negligence of the company that had employed him; but the injured man had not performed his duty in looking where he ought to have looked, and avoiding the danger which he must have seen was before him if he attempted to cross the tracks. In dissenting from this judgment I cannot make myself plainer than by repeating what we said in Greenwood v. Phila., etc., R. R. Co., 124 Pa. 572, and from which I regret to feel, there has this day been an unwise departure : " I do not understand the law to be that when a railroad company adopts safety-gates or any other appliance for the protection of the public, that the public are thereby absolved from the duty of taking any care of themselves. Conceding that the company was required to take extra precautions by reason of the gates being out of order, yet the plaintiff was also bound to do his part. He has no right to omit the ordi-

nary precautions when approaching a railroad crossing merely because he finds the gates up.    Machinery of all kinds is liable to get out of order, and may do so at just the critical moment of the approach of a train.    In all such cases the safety of the traveling public requires that each party shall be held to the exercise of due care.    Had this hose carriage stopped near the crossing instead of rushing on at reckless speed, this accident would not have happened.    The train could have been seen for 100 feet before the crossing was reached.    If the rule to stop, look and listen were always observed, an accident at crossings, now so frequent, would rarely occur, whether in town or country.    It is difficult to see why the rule is not as important in towns and cities as in the country, where in many instances the track can be seen for a long distance.    The rule itself is so valuable ; is sustained by such abundant authority ; and is moreover founded upon such excellent common sense reasons, that we will neither depart from it nor allow it to be undermined by exceptions.    It is a clear and certain rule of duty, and a departure from it is more than evidence of negligence ; it is negligence per se."

MITCHELL and FELL, JJ., concur in dissent.