Muehlhof *v.* Reading Co., Appellant.

18

Argued May 10, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Fred B. Moser,* for appellant.

*Edward J. Flynn,* with him *J. A. Welsh* for appellee.

OPINION BY MR. JUSTICE DREW, June 30, 1932:

On December 15, 1929, at about 6:45 a. m., one Joye Oberdorf, an employee of the plaintiff, Carl Muehlhof, drove the latter's five-ton truck in a southerly direction

along a road in Northumberland County leading from the main highway to the Alaska Colliery. Double tracks of the defendant, Reading Company, crossed the road, at grade, in an easterly and westerly direction; upon this crossing plaintiff's truck was badly damaged in a collision with a passenger train of the defendant, and in its removal from the scene was completely demolished. Plaintiff brought this action in trespass to recover damages for the loss of the truck, and a verdict was rendered in his favor for $4,000, the full amount of his claim. Judgment was subsequently entered on the verdict, and, after the overruling of its motions for judgment n. o. v. and for a new trial, defendant appealed. Certain rulings of the trial judge, a portion of his charge to the jury, and the refusal of defendant's motions for binding instructions and for judgment n. o. v., have been assigned as error.

In reviewing the denial of a motion for judgment n. o. v., the testimony must be read in the light most advantageous to the plaintiff, all conflicts therein being resolved in his favor, and he must be given the benefit of every fact and inference of fact, pertaining to the issues involved, which may reasonably be deduced from the evidence: Mountain v. American Window Glass Co., 263 Pa. 181; Galliano v. East Penn Electric Co., 303 Pa. 498; Hegarty v. Berger, 304 Pa. 221.

Applying this rule, the verdict of the jury must be taken as having established the following facts: The accident occurred before daybreak on a dark, foggy and misty winter morning. About four feet from this grade crossing, over which he had never driven before, Oberdorf, a driver of thirteen years' experience, stopped the truck, looked up and down the tracks, and listened. Because of the atmospheric conditions, he was then able to see the railroad tracks to the west for a distance of only 150 feet, although on a clear day they were visible for a distance of 1,600 to 2,100 feet in that direction. Not seeing or hearing anything indicating the approach of

a train, he proceeded to negotiate the crossing in low gear, traveling at a speed of about two miles an hour. When the front wheels of his truck had reached the farther rail of the second track, he observed a light emerging out of the darkness about 300 feet away, on the railroad track, and coming toward him at a speed which he estimated at fifty miles an hour. Believing this to be the headlight of a locomotive, and that the only chance to avoid a collision lay in completing the crossing, Oberdorf continued to go forward. The engineman first saw the truck when it was on the track in front of him. The train, which was composed of an engine and two coaches, collided with plaintiff's truck, striking it at the right rear wheel, and came to a stop about 540 feet beyond the crossing. The truck was thrown from the road into a ditch along the tracks, facing in the direction from which it had come, but still upright. Later in the morning it was dragged along the tracks, admittedly by employees of the defendant, to a spot about 500 feet away from the highway. It was there found five hours later with its wheels in the air and almost totally demolished.

The only real controversy is whether plaintiff's employee was, as a matter of law, guilty of contributory negligence. In our opinion he was not. Oberdorf stopped, looked and listened at a place where it was customary to do so. Neither seeing nor hearing anything, so he testified, he started forward at a speed of two miles an hour, crossed the four feet between where he stopped and the nearest rail, the space between the two tracks, and the rear wheels of the truck were leaving the last rail of the farther track when it was struck by defendant's locomotive, which approached the crossing in a heavy fog without giving notice of its approach by whistle or by bell. Under these circustances the question of whether Oberdorf was guilty of any negligence which contributed to the accident was one for the jury: Bard v. P. & R. Ry. Co., 199 Pa. 94; Milligan v. P. &

R. Ry. Co., 261 Pa. 344; Muscarella v. New York
Central R. R. Co., 265 Pa. 120; Clinger v. Director
General of Railroads, 271 Pa. 88; Olive v. Director
General of Railroads, 275 Pa. 173; Thomas v. Penna.
R. R. Co., 275 Pa. 579; Guilinger v. Penna. R. R. Co.,
304 Pa. 140. As we said in Bush v. P. & R. Ry. Co., 232
Pa. 327, where plaintiff's chauffeur drove upon a rail-
road crossing at night, after having stopped, looked and
listened, "whether he stopped a sufficient length of time
to inform himself of conditions, and whether he ad-
vanced with due caution from that point, were questions
to be determined not by hard and fast rules of positive
duty applicable in all cases, but by the jury upon a con-
sideration of all the circumstances in the case." "Stop-
ping is opposed to the idea of negligence, and unless,
notwithstanding the stop, the whole evidence shows neg-
ligence so clearly that no other inference can properly be
drawn from it, the court cannot draw that inference as
a conclusion of law, but must send the case to the jury."
Ely v. Ry. Co., 158 Pa. 233; Calhoun v. Penna. R. R.
Co., 223 Pa. 298; Bush v. P. & R. Ry. Co., supra;
Shaffer v. Penna. R. R. Co., 258 Pa. 288. Plaintiff's
truck, traveling at a very low rate of speed, was hit as
its rear wheel was clearing the last rail of the second
track, and not immediately after entering the crossing,
hence the rule contended for by defendant that "It is
vain for a man to say that he looked and listened, if, in
spite of what his eyes and ears must have told him, he
walked directly in front of a moving locomotive and
was immediately struck" cannot apply: Milligan v. P.
& R. Ry. Co., supra; Thomas v. Penna. R. R. Co.,
supra. That rule, first enunciated in Carroll v. Penna.
R. R. Co., 12 W. N. C. 348, as said in Waltosh v. Penna.
R. R. Co., 259 Pa. 372, quoting from Howard v. B. &
O. R. R. Co., 219 Pa. 358, "applies only where a person
enters upon a railroad track, and is struck by a moving
train so instantaneously as to raise a legal presumption
that he did not stop, look and listen, and to rebut any

presumption that he had done so." The plaintiff's case does not show any negligence on the part of Oberdorf, it does disclose negligence on the part of defendant, and it was therefore properly submitted to the jury.

Defendant also contends that the trial court unduly emphasized Oberdorf's testimony with respect to the fog and its interference with his vision, in charging the jury that "He stated that upon that day there was a dense, very dense, fog which limited his vision......" Oberdorf described the atmospheric conditions as "terrible foggy." We can see no cause for complaint in the court's substitution of "dense, very dense, fog" for "terrible foggy."

We cannot say, as defendant would have us, that the court erred in admitting in evidence Oberdorf's estimate as to the speed of the train. It is contended that he was incompetent to testify as to this fact, in view of his limited opportunity for observation. He had been driving automobiles and trucks, and observing speedometers, for thirteen years. He was accustomed to judge speed and experienced in doing so. He saw the train approaching for 300 feet, and may have estimated its speed by the quickness with which it covered that distance. Under these circumstances, it cannot be said, as a matter of law, that he was incompetent to express an opinion as to its speed: Mellon v. Lehigh Valley R. R. Co., 282 Pa. 39. Competency for this purpose does not require the possession of technical or scientific knowledge; any intelligent person, accustomed to observing moving objects, is competent to testify to the speed of a railroad train out of his everyday experience, although the weight to be given his testimony—whether worth something or nothing, depending upon his opportunity for observation—is a question for the jury: Dugan v. Arthurs, 230 Pa. 299. His estimate finds some support in the fact that the train was unable to stop until it had gone over 500 feet after striking the truck, although its emergency brakes were applied, the engineman testified, as soon as

he observed the truck on the crossing. The distance traveled after the accident has a bearing on the question of speed: Kuhns v. Conestoga Traction Co., 290 Pa. 303; Lunzer v. P. & L. E. R. R. Co., 296 Pa. 393.

The third assignment of error complains of the ruling of the court below that any damage sustained by the truck in its removal from the scene of the accident by defendant's employees was a continuation of the original trespass. Defendant, however, apparently did not deem the question worthy of consideration, as it is neither referred to in defendant's brief nor comprehended in the statement of questions involved. We are not, therefore, called upon to consider it: Yeager v. Gately & Fitzgerald, 262 Pa. 466; Kress H. M. Co. v. George Hogg Co., 263 Pa. 191; Com. v. Smith, 266 Pa. 511; Silver v. Edelstein, 266 Pa. 531. However, we see no error in the ruling of the court. The injury complained of in the statement of claim is the loss of the truck, caused by the negligent operation of defendant's train, and by the negligent manner in which defendant's employees removed it from the scene of the accident. Together they constitute a single trespass, the destruction of the truck, for which damages may be recovered in this action.

Judgment affirmed.