## Welsh *v.* Pennsylvania Railroad Company, Appellant.

Argued September 29, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Samuel W. Pringle,* of *Dalzell, Dalzell, McFall & Pringle,* for appellant.

*Henry Kauffman,* with him *Louis Little,* for appellee.

OPINION BY MR. JUSTICE MAXEY, November 27, 1933:

About 9:30 p. m., March 4, 1930, Hannah Welsh, then nearly seventy years of age, while walking southward over the five-track crossing of the Pennsylvania Railroad Company at Heisel Street, Homestead, was struck and injured by an eastbound freight train on the fifth track. There are no safety gates at the crossing but ordinarily a watchman is stationed there. Plaintiff and others tes-

tified that the watchman was not at the crossing when plaintiff crossed the tracks. The distance from the first rail of the first track to the last rail of the fifth track is 54 feet. There are pedestrian plank walks at right angles to and across the tracks on both sides of the crossing, these plank walks being projections of the foot-walks on each side of Heisel Street.

The train which struck plaintiff approached from her right and she said that before she got on the first track she could see toward the west, i. e., her "right," only as far as Dixon Street, 360 feet away from the Heisel Street crossing. There is a curve at Dixon Street. It was also testified that plaintiff's westward view as she crossed the tracks was diminished because of buildings jutting out to the track at Dixon Street. It was plaintiff's contention that beams from the headlights of approaching eastbound trains, because of the curve at Dixon Street, first strike a point beyond the first track at Heisel Street, and as the locomotives approach the latter crossing the rays of the headlight veer around so that they finally illuminate the particular track on which the train is running. Plaintiff said she stopped before she started over the crossing, that she looked both to the east and west, and listened, that she neither saw nor heard any train approaching before she entered the crossing, and that when she got to the last track she saw "a flash of light, and it was too late then......and it catched me there. I was all excited—I didn't know nothing until the next day." The evidence as to the speed of the train was conflicting, but there was evidence adduced in behalf of the plaintiff that the train was going from 35 to 40 miles an hour and gave no warning of its approach. The jury returned a verdict for the plaintiff in the sum of $6,000. The motion for judgment n. o. v. was refused. Defendant appealed.

Appellant concedes that the evidence was such as to raise a jury question as to appellant's negligence but it is contended that appellee was guilty of contributory

negligence. Appellant offered evidence showing that when appellee was five feet back of the first rail of No. 1 track and therefore in a position of safety, she had a view westward of 573 feet. This was shown by a map made by an engineer and offered in evidence. It is conceded by appellant that there was evidence offered not only by appellee herself but by at least another witness that there was not a view from the first track as far as the map offered in evidence by defendant would indicate, and counsel, in their brief, reply to this by saying: "Probably these witnesses were speaking of the view to be had without there being any bright headlight to look for." As to this it may be observed that in these days when there are so many bright electric lights on automobiles and on streets and buildings, even the headlight of a train does not have the significance it had in former days when bright and flashing lights were not so common. Furthermore, here the headlight did not, because of the curve between the locomotive and the crossing, project its beams directly on the crossing. We cannot say as a matter of law that plaintiff was guilty of contributory negligence because she could, if she had looked westward, have seen the headlight 573 feet away if it had been there at that time. A train traveling 40 miles an hour can traverse a distance of more than 573 feet in ten seconds, and it is entirely possible that this headlight was not in view when plaintiff made her observation before crossing the tracks.

This is not a case where a person is injured immediately upon entering a railroad track. In such a case, particularly when there is a view for a considerable distance, it is obvious that the person struck has not stopped, looked and listened, or has done so in a careless manner. Appellant relies on the case of Hawk et ux. v. P. R. R., 307 Pa. 214, 160 A. 862. The facts of that case differ materially from the facts of the present case. There the plaintiff drove an automobile across a double track crossing on a clear morning where her view in the

direction from which the train came extended at least 1,300 feet. It was obvious in that case that if the plaintiff did not see the train approaching her before it struck her it was because she did not stop, look and listen. In the case before us the accident occurred at night and there were five tracks instead of two and the "danger zone" of the crossing was nearly 60 feet in width instead of 22½ feet, as in the Hawk Case, and the tracks on which the train approached were curved about 360 feet away. In the Hawk Case the plaintiff was in an automobile; here the plaintiff was walking. It is a fair assumption that it took this nearly seventy-year-old plaintiff a much longer time to walk over the 60 feet of the "danger zone" than it took the plaintiff in the Hawk Case to drive over the 22½ feet of "danger zone" in that case.

In the case of Thomas v. P. R. R. Co., 275 Pa. 579, 119 A. 717, we held that the question of plaintiff's contributory negligence was for the jury where the person drove onto a crossing and was killed on the second track, and where there was a conflict of the testimony of the witnesses both for the plaintiff and the defendant as to the distance the train which killed the deceased could be seen as it came around the bend near the crossing. We there said: "Where there is a substantial conflict in the evidence as to the distance an approaching train is visible from a given point, the question is for the jury. ...... Assuming the train was moving forty miles an hour, which is justified by the evidence, and that it could be seen four hundred feet from the crossing, the maximum distance fixed by plaintiff's witnesses, it would cover that distance in less than seven seconds. ...... The train may not have been in sight when Thomas committed himself to the crossing. The truck moved about twenty-three feet from the place of the alleged stop until it was struck......so it cannot fairly be affirmed that, in spite of what his eyes and ears must have told him, Thomas drove in front of a moving train and was imme-

diately struck. ...... Had there been a single track only, that rule might be applied, but the traveler having once stopped, is not bound to stop again on or between the tracks to look and listen......although he is bound to proceed with care and keep a look-out so long as danger is to be apprehended;......whether he does so is generally for the jury." See also Mills v. P. R. R. Co., 284 Pa. 605, 131 A. 494.

It may well be that when Mrs. Welsh suddenly saw the headlight of the approaching train on the fifth track, this sudden peril caused her to err in judgment but an error in judgment does not constitute contributory negligence. If she saw the headlight of the approaching train before she had gotten into a position of danger on the fifth track, she would probably not have been able to determine instantly on which track it was approaching, and she obeyed a natural instinct to try to get off all the tracks instead of remaining on or retreating to the fourth track. This court said in Weiss v. Pittsburgh Rys. Co., 301 Pa. 539, 543, 152 A. 674: "The situation of danger arose after he [the decedent] was committed to the crossing. His acts with regard to negligence must be judged from the circumstances as they then appeared. In his position one is not required to exercise the highest or even an ordinary degree of judgment; it is a judgment arising from peril or care under the circumstances."

This court has frequently held that "where there is doubt as to negligence upon the part of the plaintiff, the case is for the jury": Howard v. B. & O. R. R., 219 Pa. 358, 360, 68 A. 848. The case now before us is one in which the negligence of the plaintiff is not so clear that it can be declared a matter of law. The case was properly submitted to the jury.

The judgment is affirmed.