## Baker, Appellant, *v.* Pennsylvania Railroad Company.

414

Argued October 1, 1951. Before DREW, C. J., STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*E. V. Buckley,* with him *Mercer and Buckley,* for appellant.

*John R. Bredin,* with him *Dalzell, McFall, Pringle and Bredin,* for appellee.

OPINION BY MR. JUSTICE JONES, January 7, 1952:

The plaintiff as administratrix of her deceased husband's estate brought suit under the Wrongful Death and Survival Acts to recover damages for his death in a grade crossing accident allegedly due to negligence of the defendant railroad company. The jury returned verdicts for the plaintiff, the amounts whereof are not questioned. The defendant filed motions for judgments n.o.v. on the ground that the plaintiff's decedent was guilty of contributory negligence as

a matter of law. The court en banc sustained the motions and, accordingly, entered the judgments for the defendant from which the plaintiff took these appeals.

It is conceded here, as it was below, that the evidence was sufficient to carry the case to the jury on the question of the defendant's negligence. The sole inquiry is whether the plaintiff's decedent was guilty of contributory negligence as a matter of law. In answering that question, we necessarily take the evidence and all reasonable inferences therefrom most favorable to the plaintiff. So viewed, the following are the material facts.

As the plaintiff's husband was driving a bakery delivery truck over the River Road grade crossing of the defendant company's four track railroad in the village of Haysville, eleven miles west of Pittsburgh, he was struck on the fourth track over by a passenger train travelling westward at a speed of 65 miles per hour and was killed instantly. The accident occurred at 6:15 P.M. on December 20, 1947. It was dark at the time. The weather was "fairly clear"; there was some smoke and mist in the air. The railroad, at the place of the accident, runs in a generally east-west direction and more or less parallel to the Ohio River which is approximately 200 feet to the south of the railroad. River Road extends from the river in a northerly direction across the railroad at right angles and then across the Ohio River Boulevard, a four-lane "very much travelled highway" which lies immediately north of and parallel to the railroad; the distance between the southerly curb of the Boulevard and the northernmost rail of the tracks is about 28 feet at the location of the crossing. The width of the separation between the highway and the railroad diminishes as they extend eastward. From the south, the tracks are numbered 1, 2, 3 and 4: No. 1, being the eastbound passenger

track; No. 2, the eastbound freight track; No. 3, the westbound freight track; and No. 4, the westbound passenger track.

Going north, River Road ascends steeply to the railroad crossing, the average grade for the 40 feet immediately south of the No. 1 track being approximately 14 per cent. The last 10 feet rise even more steeply. Because of the angle at which the hood of an automobile, approaching the crossing from the south, is elevated, it is impossible for a driver to see a man standing in the middle of the road at the far side of the crossing. That situation continues until the vehicle is leveled off on track No. 1. The driver's view to the east, approaching the crossing from the south, is similarly obstructed by the rising elevation of the road as well as by a number of industrial buildings and a passenger shed which, at the time of the accident, stood within 14 feet of the south (or outside) rail of track No. 1 and close by the road. From this point, the view to the east is further interfered with by a series of telegraph poles planted on a line parallel to the tracks 8 feet south of the southernmost rail. From about 10 feet south of and onward to the crossing a driver had a fairly uninterrupted view of the track to the east for approximately 1400 feet, and at certain points along the road back to about 20 feet south of the crossing a clear view of the tracks to the east could at times be had between various obstructions. To the west of the crossing at a point 170 feet distant, the tracks curved to the left so that, from a point 10 feet south of the south rail of the No. 1 track at the crossing, a train approaching from the west on that track could be seen for a distance of only 700 feet. Further difficulty attended an approach to the crossing from the south at nighttime because of the confusing background to the east created by the lights of cars moving westward along the Ohio River Boulevard; and loud noises from the heavy forging hammers

in the steel mills directly across the river, which were operating at the time of the accident, were plainly audible at the crossing.

In committing himself to the crossing, the deceased was first observed at a point 5 feet south of the south rail of the No. 1 track proceeding at a speed of 5 miles an hour. He continued over the crossing at the same speed; the cartway was rough; he passed safely over the first three tracks and was struck when upon the fourth track. The headlight of the locomotive was dim; no warning of the train's approach was given. There was on guard at the time a crossing watchman who was standing with lanterns 15 feet north of the north rail of the No. 4 track, that is, across all the tracks and back toward the Ohio River Boulevard. However, the watchman was not visible to the deceased until the latter had leveled off on the No. 1 track.

The learned court below entered the judgments for the defendant, n.o.v., by erroneously applying the incontrovertible physical facts rule which has no place in this case. The deceased having been killed in the accident, a presumption arises that he used due care. in committing himself to the crossing. In *Perry v. Pittsburgh Railways Company,* 357 Pa. 608, 612-613, 55 A. 2d 354, we said that ". . . in a case, such as the present, where the accident in suit resulted in death, a presumption attends the plaintiff that the decedent exercised due care for his own safety." As there noted, the rule and its rationale were well stated by the late Chief Justice Maxey in *Morin v. Kreidt,* 310 Pa. 90, 97, 164 A. 799, as follows, "When a person is killed in an accident there is a presumption arising from the general knowledge of the strength of the instinct of self-preservation and the natural desire to avoid pain and injury to oneself that the deceased at the time of the accident was exercising due care", quoted with approval in *Michener v. Lewis,* 314 Pa. 156, 158, 170, A. 272. See,

also, *Ehrhart v. York Rys. Co.,* 308 Pa. 566, 570, 162 A. 810, and cases there cited. It follows, therefore, that the plaintiff's decedent stopped, looked and listened before entering upon the crossing. There is nothing from which it can be concluded as a matter of law that the passenger train approaching from the east was then observable from a point on the roadway south of the crossing. Nor is there anything otherwise in the plaintiff's case to negate the presumption. When the plaintiff's eyewitness to the accident first saw the deceased in motion, he was then within 5 feet of the south rail of No. 1 track which, manifestly, does not establish that he had not stopped, looked and listened elsewhere at a proper place. In *Bush v. Philadelphia & Reading Railway Company,* 232 Pa. 327, 328-329, 81 A. 409, where plaintiff's chauffeur drove upon a railroad crossing at night, after having stopped, looked and listened, we said that "Whether he stopped a sufficient length of time to inform himself of conditions, and whether he advanced with due caution from that point, were questions to be determined not by hard and fast rules of positive duty applicable in all cases, but by the jury upon a consideration of all the circumstances in the case . . . ." See *Muehlhof v. Reading Co.,* 309 Pa. 17, 21, 162 A. 827; also, *Knepp v. Baltimore & Ohio Railroad Company,* 262 Pa. 421, 424, 105 A. 636.

From the opinion for the court en banc it appears that the court concluded that "The decedent either failed to stop, look and listen before entering the crossing", wherein he would be guilty of negligence, or he "proceeded over the tracks after he became aware of the approaching locomotive" in which event "he was negligent in risking the obvious danger of a collision." The first alternative is in direct disregard of the legally attendant presumption of care on the part of the deceased afforded by the evidence. The second is an er-

roneous statement of the law with respect to one properly committed to a multiple-track grade crossing.

The incontrovertible physical facts rule, upon which the defendant relies, is not applicable to a case such as this where the deceased, having stopped, looked and listened before entering upon the crossing, was not struck on the first track. The inapplicability of the above-mentioned rule in such circumstances was pertinently stated by our present Chief Justice in *Muehlhof v. Reading Co.,* supra, where he said (p. 21),—"Plaintiff's truck, traveling at a very low rate of speed, was hit as its rear wheel was clearing the last rail of the second track, *and not immediately after entering the crossing,* hence the rule contended for by the defendant that 'It is vain for a man to say that he looked and listened, if, in spite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive and was immediately struck' cannot apply: [citing cases]. That rule, first enunciated in Carroll v. Penna. R. R. Co., 12 W.N.C. 348, . . . 'applies only where a person enters upon a railroad track, and is struck by a moving train so instantaneously as to raise a legal presumption that he did not stop, look and listen, and to rebut any presumption that he had done so' " (Emphasis supplied), citing *Howard v. Baltimore & Ohio Railroad Company,* 219 Pa. 358, 360, 68 A. 848, as quoted in *Waltosh v. Penna. R. R. Co.,* 259 Pa. 372, 377, 103 A. 55. The plain intendment of the ruling in the *Muehlhof* case is that where a traveller stops, looks and listens before entering upon a grade crossing and, neither seeing nor hearing anything approaching on the tracks, proceeds and is thereafter struck by a train on a track beyond the first, the question of his contributory negligence is for the jury. There are a number of other decisions of this court to like effect: see, e.g., *Thomas v. Pennsylvania Railroad,* 275 Pa. 579, 119 A. 717 (the accident having occurred on the second track) ; *Mills v.*

*Pennsylvania R. R.,* 284 Pa. 605, 131 A. 494 (last rail of the second track) ; *Welsh v. Pennsylvania Railroad Company,* 313 Pa. 87, 169 A. 95 (fifth track) ; and *Harris v. Reading Company,* 325 Pa. 296, 189 A. 337 (second track).

The deceased was, of course, bound to proceed with care after entering upon the crossing: *Thomas v. Pennsylvania Railroad,* supra. It was his continuing duty both to look and to listen while crossing: *Kolich v. Monongahela Railway Co.,* 303 Pa. 463, 467, 154 A. 705. But, having once stopped in the exercise of reasonable care before entering upon the crossing, he was not bound, as a matter of law, *to stop* again on or between the tracks to look and listen. In *Murtagh v. Director General of Railroads,* 271 Pa. 290, 292, 112 A. 436, it was said that ". . . in no case has it been held [the traveller] must stop, look and listen on the tracks or between them while in the act of crossing: [citing] Cohen v. Phila. & Reading R. R. Co., 211 Pa. 227; Ayers v. Ry. Co., 201 Pa. 124." Committed to the crossing, he is in a position of peril, in a "danger zone", as Justice MAXEY denominated the entire width of the five-track crossing in the *Mills* case, supra.

Had the deceased in the instant case stopped on the crossing, upon becoming aware of the approach of the westbound passenger train on track No. 4, he could not have known but what he would be struck by an eastbound train which could have borne down upon him from out of sight to the westward within five or six seconds. It will be recalled that, upon entering the crossing, he had a view to the west of only 700 feet. Perhaps he thought that by continuing across, he could clear the oncoming westbound train, which he almost did. But, even if he exercised bad judgment in the face of the evident and imminent peril, he cannot be deemed guilty of contributory negligence *as a matter of law:* *Knepp v. Baltimore & Ohio Railroad Company,* supra.

What Mr. Justice KEPHART said for this court in *Weiss v. Pittsburgh Railways Co.*, 301 Pa. 539, 543, 152 A. 674, has peculiar significance here,—"We cannot say decedent was guilty of contributory negligence; that was a matter for the jury. It is clear he was in a position of extreme peril . . . . The situation of danger arose after he was committed to the crossing. His acts with regard to negligence must be judged from the circumstances as they then appeared. In his position one is not required to exercise the highest or even an ordinary degree of judgment; it is a judgment arising from peril or care under the circumstances." Or, as we said in *Zurcher v. Pittsburgh Railways Company*, 353 Pa. 212, 216, 44 A. 2d 581, with respect to one in a position of peril,—"Nor was he responsible as a matter of law merely because of his possible errors or mistakes in trying to extricate himself from a position of danger which he had not created: see *Altomari v. Kruger*, 325 Pa. 235, 238-239, 188 A. 828, and the cases there reviewed. Whether the plaintiff was guilty of negligence depended upon the care he exercised *in the circumstances*. Under the perilous and varying conditions, here shown, only a jury may competently apply the required standards of care as determined by it on the basis of the conduct expected of a reasonably prudent person in circumstances such as those which attended the plaintiff prior to the collision."

The judgments are reversed with directions that judgments be entered for the plaintiff on the verdicts.

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

Deceased was guilty of negligence *as matter of law*, which justified the entry of judgments for defendant n. o. v.

Plaintiff's witness, Robert R. Martin, was the only eye witness to this distressing fatal accident. He was employed at a factory nearby; had formerly lived in the neighborhood and had also been a watchman at this crossing. The witness testified (p. 34a et seq.) that he saw deceased driving the bread truck at between 5 and 10 miles an hour; that (69a) "Q. . . . the truck continued up on to the crossing and across number 1 track and number 2 track . . . and was finally on number 4 track when it was struck? A. That's right. Q. And in all the time you saw the truck it never stopped, did it? A. No, sir." The witness also testified (41a) that when the truck was 5 to 10 feet from the first rail he heard the railroad crossing watchman "holler" and (70a) saw the train coming approximately 100 to 200 feet from the crossing; that he saw the crossing watchman (71a) just north of No. 4 track; that immediately after the accident he observed that the watchman had two lighted lanterns in his hands. *Before the accident* the witness had not observed the lanterns because (72a) after the watchman called to deceased and the witness saw the train coming he "fastened my eyes on the truck to see if it would stop. . . . I kept my eyes on the truck until the accident happened."

The majority opinion states "Perhaps [deceased] thought that by continuing across, he could clear the oncoming westbound train, which he almost did." This statement, it is true, was based upon the assumption that deceased was on the first eastbound track before he observed the oncoming westbound train. But the uncontradicted testimony of plaintiff's witness Martin was that the truck was 5 to 10 feet from the first eastbound rail when the watchman called, and *without stopping* deceased continued across the tracks.

Failure to stop, look and listen before crossing a railroad track constitutes contributory negligence as

matter of law: *Valera v. Reading Company,* 349 Pa. 123, 126, and cases therein cited, 36 A. 2d 644.

If deceased, despite the warning of the watchman, saw and heard, or should have seen and heard, the rapidly approaching train 100 to 200 feet distant from the crossing, he was guilty of contributory negligence *as matter of law* in risking the obvious danger of a collision in proceeding across the tracks.

For these reasons I dissent and would affirm the judgments of the court below.

Mr. Justice BELL joins in this dissent.