James A. O'NEILL, Administrator of the Estate of Earl F. Smith, Deceased, Appellant,

v.

READING COMPANY.

No. 13619.

United States Court of Appeals Third Circuit.

Argued Jan. 22, 1962.

Decided July 3, 1962.

B. Nathaniel Richter, Philadelphia, Pa. (B. Nathaniel Richter, Kenneth Syken, Arthur G. Raynes and Richter, Lord & Levy, Philadelphia, Pa., on the brief), for appellant.

Thomas Raeburn White, Jr., Philadelphia, Pa. (Jan E. DuBois and White & Williams, Philadelphia, Pa., on the brief), for appellee.

Before KALODNER, STALEY and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

Earl F. Smith ("decedent") was killed when the pickup truck that he was driving collided with a train of the defendant, Reading Company, at a crossing in Topton, Pennsylvania. Plaintiff, as administrator of decedent's estate, brought this suit in the District Court for the Eastern District of Pennsylvania to recover damages under the Pennsylvania Wrongful Death and Survival Acts. Judgment was entered in favor of defendant pursuant to the finding of the jury, in answer to a special interrogatory, that decedent was negligent.[1] Plaintiff's motion for new trial was denied, and this appeal followed. Jurisdiction exists by reason of diversity. Pennsylvania law governs.

Plaintiff seeks a new trial on the basis of several alleged trial errors. Defendant contends that we need not consider the alleged errors, inasmuch as the District Court should have directed a verdict for defendant on the ground that decedent was guilty of contributory negligence as a matter of law. Before turning to the alleged trial errors, we will first consider defendant's contention.

---

[1]. The jury did not answer the remaining interrogatories relating to defendant's alleged negligence and the amount of damages.

Plaintiff's own testimony, says the defendant, established that (1) the approaching train was visible before decedent reached the railroad crossing, and (2) warning signals flashing red gave notice of the approaching train before decedent reached the crossing.

Defendant's first point is without merit. There was positive testimony by plaintiff's witness Schofer that the train was not visible at the point where decedent reached the crossing. Indeed, the trial judge specifically commented on Schofer's testimony to that effect in presenting to the jury the issue as to visibility raised by conflicting testimony with respect to it.

█ Defendant relies on the testimony of plaintiff's witness Hertzog as establishing the flashing of red warning signal lights before decedent reached the crossing. Hertzog was driving his vehicle south on Haas Street to the rear of decedent's truck. On direct examination he was questioned as to the *sounding* of warning signals by the train horn, whistle or bell and the actions of decedent *after* he embarked on the crossing. Defendant, nevertheless, was permitted on cross-examination to question Hertzog with respect to the flashing of signal lights, visibility and the conduct of decedent *before* he embarked on the crossing. Assuming, for the purpose of resolving the issue of contributory negligence, that the cross-examination was permissible, the glaring inconsistencies and contradictions in Hertzog's testimony detract from the weight which defendant accords it. It is settled law that when a witness gives contradictory testimony it is the function of the jury, and not of the court, to resolve the conflict. Stevenson v. Pa. Sports & Enterprises, Inc., 372 Pa. 157, 162, 93 A.2d 236 (1952).[2] These instances of the conflicts in Hertzog's tes-

timony may be stated: at one point he testified that he did not remember whether the signal lights were flashing before decedent entered the crossing and at another he said that they were; at one point he said he had no recollection whether decedent had stopped before embarking on the railroad crossing and at another he said he did.

█ In resolving the issue as to whether contributory negligence existed here as a matter of law we must, of course, view the evidence in the light most favorable to the plaintiff giving him the benefit of every favorable inference. Baker v. Pennsylvania R. R. Co., 369 Pa. 413, 415, 85 A.2d 416 (1952). On the record in this case we are unable to say that reasonable men in an impartial exercise of their judgment could not have reached different conclusions with respect to the issue of the decedent's negligence,[3] bearing in mind particularly the presumption of due care accorded by Pennsylvania law to decedent.[4] Accordingly we do not subscribe to defendant's contention that contributory negligence existed here as a matter of law.

█ What has been said brings us to the points raised by the plaintiff in this appeal. We will direct our attention to plaintiff's complaint that the trial judge in the absence of any evidence of frost on the side windows of decedent's truck instructed the jury that they could find decedent guilty of contributory negligence if he was unable to see the approaching train because of the frosted side windows and that this error was prejudicial because it permitted a jury finding of contributory negligence on a ground without evidentiary basis.

The instructions relating to frost are as follows:

"The driver of an automobile who is under a duty to look and to con-

2. In Stevenson there was conflict in the injured plaintiff's own testimony.

3. Pritchard v. Liggett & Myers Tobacco Company, 295 F.2d 292, 295 (3 Cir. 1961); Larkin v. May Department Stores Company, 250 F.2d 948, 950 (3 Cir. 1958).

4. Keasey v. Pittsburgh & Lake Erie R. R., 404 Pa. 63, 170 A.2d 328 (1961); Johnson v. Pennsylvania R. R., 399 Pa. 436, 160 A.2d 694 (1960); Travis v. Pennsylvania R. R., 377 Pa. 537, 105 A.2d 131 (1954); Baker v. Pennsylvania R. R., 369 Pa. 413, 85 A.2d 416 (1952).

tinue to look, as was plaintiff's decedent in this case, is required to see objects which are plainly visible. If you find that the train which struck the decedent was plainly visible at the time decedent entered the crossing, and that decedent failed to see the train simply because he was not paying proper attention, or because the windshield or side window of his truck was frosted and thereafter drove in front of the train and was killed, your verdict must be in favor of the defendant.

"If you find that decedent could have seen defendant's train approaching either before or after he entered the crossing, or before he reached the track on which the train was running, and could have stopped his car in a safe place after seeing it, and if you find further that he did not see the train, either because he did not look properly or because there was frost on his windshield or side window, decedent would be guilty of contributory negligence and your verdict should be for the defendant.

"I charge you as a matter of law that it is no excuse for the driver of a motor vehicle to have the windshield or window of his car obscured by snow or frost, and if you find that decedent should have seen the train in time to avoid the accident, had it not been for frost on the glass of his car, your verdict must be in favor of the defendant."

When plaintiff's counsel excepted to the foregoing instructions on the ground that "there is no affirmative positive evidence

of frost in the case" the trial judge stated to the jury as follows:

*"Now, there was no evidence that I recall that there was frost on the side window to Mr. Smith's right or left as he would look, as he apparently, from the testimony from one witness, did look right and left.*

*"I am going to leave it for you to determine whether there was any frost there. There was no definite testimony that there was frost on the windows to the right or, to the left;* there was testimony, as I recall, it was very cold; there was testimony that there was frost on the windshield which was wiped away. You will consider that point along with all other evidence." (emphasis supplied)

It may be noted parenthetically that plaintiff took exception to this further instruction.

What has been said establishes that an issue was submitted to the jury on which there was no evidence and that this is reversible error is settled by a long line of cases.[5]  Mandel v. Pennsylvania Railroad Company, 291 F.2d 433 (2 Cir. 1961), cert. den. 368 U.S. 938, 82 S.Ct. 379, 7 L.Ed.2d 337; Smith v. Ellerman Lines, 247 F.2d 761, 766 (3 Cir. 1957).

In view of our holding it is unnecessary to discuss the other points presented on this appeal.

For the reasons stated the judgment of the District Court in favor of the defendant and against the plaintiff will be reversed and the cause remanded with instructions to proceed in accordance with this opinion.

5. The rationale of the rule was epitomized with characteristic descriptive vigor by Mr. Justice Musmanno, speaking for the Supreme Court of Pennsylvania, in O'Toole v. Braddock Borough, 397 Pa. 562, 155 A.2d 848 (1959), in ruling as reversible error an instruction that "if she [plaintiff] went along with her eyes in the sky or not looking, and she tripped on something that was visible and which she might have seen. * * * she is not entitled * * * to recover," when he stated (p. 565, 155 A.2d p. 850):

"There is no evidence in the case to support the inference that the plaintiff had her eyes in the sky. A trial judge must not conjure up imaginative situations which reflect adversely on either party, because there is always the possibility that the jury may take the judicially invented hypothesis as a factual foundation upon which to build a verdict which will then rest on airy fantasy rather than on evidence."