411 F.2d 88
 PROVIDENT TRADESMENS BANK AND TRUST COMPANY, Administrator of the Estate of John R. Lynch, also known as John Roberts Lynch, Deceased (Plaintiff), and
John Landis Harris and Sarah B. Smith, Administratrix of the Estate of Thomas W. Smith, Deceased (Party Plaintiffs),
v.
LUMBERMENS MUTUAL CASUALTY COMPANY and George M. Patterson, Administrator of the Estate of Donald Cionci, Deceased,
Lumbermens Mutual Casualty Company (Defendant), Appellant.
 No. 14589.
 United States Court of Appeals Third Circuit.
 Argued November 19, 1968.
 Decided April 2, 1969.
 Rehearing Denied May 2, 1969.
 
 Norman Paul Harvey, Philadelphia, Pa., for appellant.
 Avram G. Adler, Freedman, Borowsky & Lorry, Philadelphia, Pa. (Abraham E. Freedman, Freedman, Landy & Lorry, J. Willison Smith, Jr., Bayard M. Graf, Philadelphia, Pa., on the brief), for appellees.
 Before KALODNER, GANEY and FREEDMAN, Circuit Judges.
 OPINION OF THE COURT
 FREEDMAN, Circuit Judge.
 
 
 1
 This diversity action is before us now on the Supreme Court's vacation of our prior judgment and its remand for our consideration of the issues we had found it unnecessary to decide on the earlier appeal.
 
 
 2
 Edward S. Dutcher, the named insured in a policy issued by Lumbermens Mutual Casualty Company, was the owner of a passenger car which he lent to Donald Cionci. While driving the car Cionci collided with a truck driven by Thomas W. Smith, and as a result Smith, Cionci and John R. Lynch, a passenger of Cionci, were killed and John Landis Harris, another passenger of Cionci, was injured.
 
 
 3
 Lynch's estate[1] obtained a default judgment of $50,000 against Cionci's estate in the United States District Court for the Eastern District of Pennsylvania[2] after Lumbermens refused to defend Cionci's estate, asserting lack of coverage under the omnibus clause of its policy[3] because Cionci had deviated from the use authorized by Dutcher.
 
 
 4
 Before the entry of the default judgment Lynch's estate brought this separate action for declaratory judgment under 28 U.S.C. § 2201 against Lumbermens and Cionci's estate, in which it challenged Lumbermens' denial of coverage of Cionci's estate. On Lumbermens' motion, Harris, the injured passenger of Cionci, and the estate of Smith, the driver of the truck, were joined as plaintiffs. The joinder was sought and presumably granted because Harris and Smith's estate had brought separate damage actions in the Common Pleas Court of Delaware County, Pennsylvania, in which Cionci's estate, Lynch's estate and Dutcher were defendants, and common to these claims was the question whether Lumbermens' policy covered Cionci's estate. Although the accident happened on January 17, 1958, the two state court actions remain untried.
 
 
 5
 The trial judge excluded Dutcher's testimony as against the Lynch and Smith estates regarding the terms on which he had loaned his car to Cionci, on the ground that he was incompetent under Pennsylvania's so-called Dead Man's Act. Act of May 23, 1887, P.L. 158, § 5(e), 28 Purdon's Pa.Stat.Annot. § 322.[4] The trial judge, however, permitted Dutcher to testify as against Harris, who survived the accident. The factual dispute between Harris and Lumbermens on whether Cionci had deviated from the terms of Dutcher's consent to the use of the car was submitted to the jury, which found in favor of Harris. As to the Lynch and Smith estates, the trial judge granted motions for directed verdicts against Lumbermens on the ground that with Dutcher's testimony excluded there was no evidence to rebut the presumption of permission to Cionci which flowed under Pennsylvania law from the proof of Dutcher's ownership and Cionci's admitted operation of the automobile.[5] Motions for new trial and for judgment n. o. v. filed by Lumbermens were denied. 218 F.Supp. 802 (E.D.Pa.1963).
 
 
 6
 Lumbermens appealed, and at the argument before a panel of this court we raised the question whether Dutcher who had not been joined was an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. A majority of the panel held that Dutcher's joinder was not required, but after a rehearing before the court en banc the judgment of the district court was vacated and a remand ordered with direction to dismiss the action on the grounds that the district court could not decide the claims because Dutcher was an indispensable party and also that the district court in the exercise of its discretion should have denied declaratory judgment relief without regard to the merits because of the pendency of the state court actions in which all the parties were present. 365 F.2d 802 (3 Cir. 1966).
 
 
 7
 The members of the original panel majority dissented on the ground that the jury's factual decision on Harris' claim should have been preserved because it was reached after hearing Dutcher's testimony. In their view Lumbermens was collaterally estopped by Harris' judgment from contesting the issue of deviation as to the Lynch and Smith estates, regardless whether there was any error in the exclusion of Dutcher's testimony against the two decedents. In their view it was inappropriate to cancel belatedly the declaratory judgment relief after the case had already been decided by the jury. The dissent therefore went on to consider the merits of Lumbermens' objections to the judgment, which the majority, of course, had not found it necessary to reach. 365 F.2d at 816 et seq. The Supreme Court granted certiorari (Provident Tradesmens Bank & Trust Co., Administrator v. Patterson, Administrator, 386 U.S. 940, 87 S.Ct. 972, 17 L.Ed.2d 872 (1967)) and unanimously reversed. 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).
 
 
 8
 On remand from the Supreme Court we ordered a hearing before the panel which had originally considered the case.
 
 I.
 DUTCHER'S COMPETENCY AS A WITNESS
 
 9
 1. The Dead Man's Act.
 
 
 10
 At the trial it was shown that Dutcher's policy had a fixed limit, although a pretrial ruling prevented disclosure of its amount. Dutcher was held incompetent as a witness against the Lynch and Smith estates under the Pennsylvania Dead Man's Act[6] because Dutcher had an interest in maintaining the policy for himself, whereas the purpose of the Lynch and Smith estates was to subject Dutcher's policy to Cionci's liability. The trial judge reasoned that since the combined amount of the judgments which might be recovered against Cionci's estate and Dutcher respectively was as yet unknown, the claims against Cionci's estate might reduce the protection available to Dutcher under the policy and Dutcher therefore had an interest adverse to that of the Lynch and Smith estates which barred him from testifying against them.
 
 
 11
 The seemingly simple language of the Dead Man's Act has been the subject of many decisions in Pennsylvania which show how difficult at times is its application in particular circumstances. There are no Pennsylvania decisions which clearly decide whether in the present circumstances Dutcher was competent to testify against the Lynch and Smith estates, although the Act has been held inapplicable[7] in an action brought under the Pennsylvania Wrongful Death Act,[8] and, also inapplicable to a survival action under the Pennsylvania Fiduciaries Act of 1949,[9] when it is joined with an action for wrongful death.[10] It has not yet been decided, however, whether these principles would apply in a separate proceding such as this action for declaratory judgment. Nor is it possible to found a solid judgment on whether the competing claims of coverage by Cionci's estate and Dutcher are too remote to forbid the barring of Dutcher's testimony on the ground that he has an interest adverse to the decedents.
 
 
 12
 We do not believe it is necessary or even desirable for us to decide the issue of Dutcher's competency under the Dead Man's Act, for the circumstances call strongly for the estoppel of Lumbermens from raising the issue now. Lumbermens had full opportunity to present Dutcher's testimony in the Harris claim and the jury there decided against it the issue whether Cionci had gone beyond Dutcher's consent.
 
 2. Collateral Estoppel.[11]
 
 13
 Dutcher was permitted to testify fully on behalf of Lumbermens against Harris because the Dead Man's Act was held inapplicable. The issue in Harris' claim, whether Cionci deviated from the terms of the loan, was identical with that in the claims of the Lynch and Smith estates, which were tried at the same time before the same judge and jury.
 
 
 14
 Lumbermens argues, however, that since it could not have asserted against the Lynch and Smith estates a judgment in the Harris claim if it had gone in its favor, because the estates were neither parties to Harris' claim nor in privity with him, it cannot be bound as to the estates by the judgment which it lost to Harris. In support of this position Lumbermens invokes the well-known principle of mutuality.
 
 
 15
 The principle of mutuality has yielded with time to many piecemeal exceptions and they have multiplied while the rule itself seemingly remained intact. Justice Traynor, in the pioneer case of Bernhard v. Bank of America National Trust and Savings Association, 19 Cal.2d 807, 122 P.2d 892 (1942), opened the door to a frontal reconsideration of the requirement of mutuality. In a well-known passage[12] he pointed to the constitutional requirement of due process which prohibits use of the plea against a party unless he was bound by the earlier judgment as a party to it or in privity with a party.[13] No such reason, however, requires that the party who relies on the prior judgment for his claim must have been a party or in privity with a party to the earlier litigation.[14] Since Bernhard many cases have reconsidered the rule of mutuality with results reaching as extreme a view as that which would abolish mutuality entirely.[15]
 
 
 16
 We had occasion to consider the problem in Bruszewski v. United States, 181 F.2d 419 (3 Cir.), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950), where an injured longshoreman's suit against the United States for negligence of the crew and unseaworthiness of the vessel was held barred by a prior judgment against the same plaintiff in favor of the steamship company which serviced the vessel under an agreement with the United States. The plaintiff was not permitted to litigate in the second suit, against a different defendant, the issues which he had litigated and lost in the first suit. Judge Hastie, speaking for the Court, said:
 
 
 17
 "The countervailing consideration urged here is lack of mutuality of estoppel. * * * But * * * no unfairness results here from estoppel which is not mutual. In reality the argument of appellant is merely that the application of res judicata in this case makes the law asymmetrical. But the achievement of substantial justice rather than symmetry is the measure of the fairness of the rules of res judicata." (181 F.2d at 421). We have continued, however, to recognize the impropriety of holding bound by a prior judgment one who was not a party to the prior action nor in privity to a party and who therefore had no opportunity to assert his legal rights or to have his day in court. See Makariw v. Rinard, 336 F. 2d 333 (3 Cir. 1964), reversing 222 F. Supp. 336 (E.D.Pa.1963).
 
 
 18
 Just as changes have been wrought by the re-examination of the rigid principle of mutuality, so it has been recognized that hardships would flow from the complete abolition of mutuality. Professor Currie in an influential article[16] pointed out that a disaster such as a railroad or airplane accident may give rise to numerous suits against the same defendant and on accepted principle any judgments for the defendant, no matter how numerous, will not bind absent plaintiffs. To give full scope to the Bernhard case in such circumstances would offend against the most common notions of fairness. For no amount of victories by the defendant would conclude the remaining plaintiffs, whereas a single victory by any one of the plaintiffs anywhere along the line would collaterally estop the defendant as to its negligence in all the succeeding cases.[17] Currie has suggested that this difficulty can be avoided by a rule which would retain mutuality where the party sought to be estopped did not have a full and fair opportunity to litigate the issue effectively because his former adversary had the initiative.[18]
 
 
 19
 It is clear therefore that mutuality is neither to be retained as a rigid rule nor completely jettisoned.[19] As we recognized in Bruszewski, in this area the need is not for symmetry but rather for a recognition of the practical realities which surround the parties. A perceptive writer who has recently reviewed the state of the law on this subject and pointed out the difficulties inherent in either a complete rejection or a complete retention of the requirement of mutuality suggests the desirability of an increasing use of the liberal power of joinder of parties in order to bring as many as possible into the field of the first suit.[20]
 
 
 20
 In the present case it is not necessary to adopt any rigid formula. Here the facts uniquely combine to remove any possible element of unfairness or hardship on the party who lost the first suit if mutuality is not required. Indeed, in this case fairness requires the imposition of a collateral estoppel. The object of the present action was to secure a judicial decision that Lumbermens' disclaimer of coverage of Cionci's estate was unjustified. The primary adversaries, therefore, were Cionci's estate and Lumbermens, and it was through Cionci's estate, which was a named party, that the plaintiffs, including Harris, claimed. In Harris' claim Lumbermens had full opportunity of which it availed itself to present Dutcher's testimony regarding his loan of the car to Cionci. The jury, disbelieving Dutcher's testimony that Cionci had exceeded the scope of his permission, decided on the evidence that Lumbermens' policy covered Cionci's estate. Lumbermens therefore is bound by that determination and may not raise it now against the Lynch and Smith estates.
 
 
 21
 Moreover, at Lumbermens' initiative the three claims against it were joined and tried together. All sought the same relief of a declaration of coverage of Cionci by the policy. They were dealt with as three claims in one action, and were tried before the same judge and jury at the same time. As happens in innumerable instances where there are multi-parties or multi-issues, one went to the jury and the others resulted in directed verdicts. The use of the judgment in the Harris claim as a collateral estoppel in the other claims presents no surprise, unfairness or hardship to Lumbermens. On the contrary, it is clear that Lumbermens, which was a party in all three claims, should be bound by Harris' judgment against it from retrying in the claims of the Lynch and Smith estates the issue which the jury decided in Harris' claim. Even if Dutcher's testimony had been erroneously excluded on a misinterpretation of the Dead Man's Act, a new trial should not be awarded to Lumbermens to require the Lynch and Smith estates to resubmit to a jury the issue of fact which on full trial of the merits Lumbermens lost to Harris.
 
 
 22
 Of course, in this diversity action we must apply Pennsylvania law.[21] We are confronted, however, with a question which has never been considered by the Pennsylvania courts. The Pennsylvania Supreme Court has given significant recognition to the Restatements, especially the Restatement of Torts, which it has looked to in abandoning many of the older tort doctrines in that state in favor of the views fashioned by modern scholarship. But Pennsylvania's reliance on the Restatement of Torts in liberalizing its law does not require us to assume that it would follow the strict view of mutuality expressed in the old Restatement of Judgments,[22] which was promulgated before the modern erosion of mutuality occurred. Indeed, very recently in Posternack v. American Casualty Co. of Reading, 421 Pa. 21, 218 A.2d 350 (1966), Pennsylvania recognized, albeit indirectly, a departure from the requirement of mutuality. There a fire insurance company sought to invoke collateral estoppel against a claimant who had lost an earlier case against another company on a different policy. The lower court refused to allow the company to amend its answer by pleading the earlier judgment, solely because of the absence of mutuality. On appeal the Court, while recognizing that factual elements might prove significant, nevertheless reversed and ordered the amendment to be allowed. The defendant thus would have the benefit of an earlier verdict in favor of another insurer in a claim on another policy where both policies appeared to have been written by the same agent under similar circumstances and both companies had made similar defenses of lack of authority and fraud. Mr. Justice Eagen said: "The Pennsylvania rule on mutuality of estoppel is by no means so rigid that the mere mention of it, without more, will defeat the right to assert res judicata as a defense in an amendment to the pleadings. Several recent cases have recognized exceptions to the general rule * * * thus showing a tendency by this Court, at least in limited areas, not to allow the technical formalities of res judicata to stand in the way of justice."[23]
 
 
 23
 It is, of course, not possible to be assured on the ultimate limit to which Pennsylvania courts may go in loosening the requirement of mutuality. It is clear, however, that they will not be rigidly bound by it. We, therefore, entertain no doubt that the Pennsylvania courts would recognize collateral estoppel in a case such as this, where the actual circumstances remove any uncertainty whether Lumbermens, against whom estoppel is asserted, had a full and fair opportunity to try the factual issue and lost it before the same jury which would indubitably have decided the same way on the Lynch and Smith claims if Dutcher had been permitted to testify, as it did on Harris' claims. To relieve Lumbermens now of this determination on the claim that Dutcher's evidence was improperly excluded in the Lynch and Smith claims would be to ignore any rational basis for the use of collateral estoppel. It is, after all, simply a device to prevent relitigation of issues which have been fairly decided, where the parties are not the same but the circumstances are such that no significant harm results from its invocation.
 
 II.
 
 24
 THE CLAIM OF PREJUDICE BY JOINDER.
 
 
 25
 Lumbermens seeks a new trial as to Harris on the ground that it was prejudiced before the jury by the grant of directed verdicts against it in favor of the Lynch and Smith estates.
 
 
 26
 It is difficult to see how Lumbermens could have suffered any prejudice in fact. The directed verdicts in favor of the Lynch and Smith estates were ordered at the conclusion of all three cases. The jury heard Dutcher's testimony in the Harris claim and knew that he had been barred from testifying against the Lynch and Smith estates. Indeed, the trial judge explained to the jury the basis on which he was ordering a directed verdict in favor of the two estates.
 
 
 27
 The charge of prejudice therefore is reduced to no more than a claim that in a multi-claim or a multi-party trial some issues or some parties may not be eliminated by direction of the court without prejudicing the decision regarding the other issues or parties. Every day's experience is to the contrary. It is common practice for a trial court to dismiss some civil or criminal counts and submit the remainder to the jury.
 
 
 28
 In any event, the circumstances present in this record make the contention utterly without merit. Lumbermens itself brought about the joinder of Harris and the Smith estate as plaintiffs. It later opposed the efforts of the Lynch estate to obtain a severance of the trial, contending that this would defeat the purpose for which it had succeeded in joining Harris and the Smith estate. This purpose was to have Cionci's coverage determined in one trial involving all the interested plaintiffs, thereby avoiding a multiplicity of trials. Since Lumbermens brought Harris and the Smith estate into the proceedings as plaintiffs and resisted the efforts of the Lynch estate to obtain a severance, it is too late for it to urge now, after the verdict went against it, that its own success in having the three claims tried together was an injury which requires a new trial.[24]
 
 III.
 
 29
 THE INSTRUCTIONS ON DEVIATION.
 
 
 30
 There is no merit in the contention made in Lumbermens' original brief, but not pressed at the original argument and not included in Lumbermens' present brief, that the trial judge committed reversible error in his instructions to the jury on the question whether Cionci deviated from the permission granted him by Dutcher.
 
 
 31
 Dutcher, the sole survivor of the loan transaction, testified on direct examination that at approximately 3:30 P.M., while he was in a taproom in Bryn Mawr, Cionci, accompanied by Lynch asked for the loan of his car to go to Ardmore to pay a bill. He consented, but asked that they hurry back as soon as they could because there were groceries in the car which he had to deliver to his wife in time for dinner. Cionci and Lynch replied that they would be back in a half hour. On cross-examination, however, Dutcher conceded that in a pretrial deposition he had denied any urgent need to return home because he had two and a half hours to do so and his home was one-half mile away, a distance which he could walk in five minutes. He acknowledged at the trial that his testimony in the deposition was substantially true. Witnesses who investigated the accident and Harris testified that there were no groceries in the car at the time of the accident. There was other testimony indicating that Cionci had driven to Media and was returning to Bryn Mawr when the accident occurred. Bryn Mawr is approximately two miles northwest of Ardmore and ten miles northeast of Media.
 
 
 32
 The jury therefore had to consider the presumption that Cionci was driving within the scope of Dutcher's permission, and whether Dutcher's testimony regarding the permission he gave, to the extent it contradicted that presumption, was credible.[25] Dutcher's testimony, if believed by the jury, raised two possible limitations on his consent to Cionci's use of the car, one relating to distance and the other to time. The trial judge made clear to the jury the scope of the presumption and the significance of a finding that Dutcher's testimony was credible. He instructed them to find in favor of Lumbermens if there was any use of the car beyond the permission granted, either in space or in time. The charge expressly left it to the jury to recall and interpret the evidence and to weigh Dutcher's credibility in determining what permission he had granted and whether it had been exceeded. It emphatically stated that the jury must find for Lumbermens if Dutcher had given a limited permission which had been exceeded.[26]
 
 
 33
 Since the charge made no allowance for minor deviations or for implications of consent emanating from the nature of the consent to which Dutcher himself testified,[27] it was, if anything, more favorable to Lumbermens than the evidence warranted. The jury's verdict shows that it did not credit Dutcher's testimony and since Lumbermens had no right to a directed verdict on this question, the verdict must stand.
 
 
 34
 The dissent finds a defect in the charge which Lumbermens has never raised. It asserts that there was no evidence justifying the instruction that the jury might find that permission had been granted to use the car for "perhaps a couple of hours." This ignores Dutcher's cross-examination and his admission regarding his pretrial deposition. Moreover, in a supplemental charge following a colloquy with counsel the trial judge in correcting a possible misstatement of the testimony said: "* * * I intended only to point out testimony where at one point there was a question of his [Dutcher] having to leave for home within a half hour; at another point in the testimony it appears that he had indicated he had several hours before he had to go home. This does not necessarily indicate that there was permission given to have the car for several hours."
 
 
 35
 The charge, therefore, was at least as favorable to Lumbermens as it had a right to receive and there was no harmful error in the instructions on deviation.
 
 IV.
 
 36
 THE BENEFICIARIES OF THE SUPREME COURT MANDATE
 
 
 37
 Lumbermens has now presented a new contention — that neither Harris nor Smith's estate is entitled to the benefit of the Supreme Court's vacation of our earlier decision because they did not join Lynch's estate in the petition for certiorari.
 
 
 38
 It is true that the petition for certiorari was filed only by Lynch's estate. But although our decision en banc on August 30, 1966, declared that the judgment of the district court would be vacated and the cause remanded with directions to dismiss the action, we issued no mandate to the district court. Instead, on the application of Lynch's estate, we stayed the mandate pending the filing of its petition for certiorari.[28] Accordingly, when we received the Supreme Court's mandate vacating our judgment and remanding for consideration of the issues which we had not decided, Harris and Smith's estate were still before us as joint plaintiffs with Lynch's estate. Their rights had not yet been finally adjudicated, and the record in their case which had been transmitted to the Supreme Court as part of the record in the Lynch case has now been returned to us with the Supreme Court's remand. Since our judgment has been vacated by the Supreme Court and the record remanded to us for further proceedings, we must now adjudicate the claims of Harris and Smith's estate as well as the claim of Lynch's estate.
 
 
 39
 Moreover, it is hardly appropriate for Lumbermens to seek to restrict the Supreme Court's vacation of the judgment to Lynch's estate because it alone had applied for certiorari. Lumbermens, on the earlier appeal to us, had deemed the three plaintiffs to be jointly united against it. When the judgments in the district court were rendered in favor of Harris and the Lynch and Smith estates, Lumbermens took but one appeal to us,[29] treating the judgments as joint. The same consideration requires that the petition for certiorari filed by Lynch's estate be deemed to inure to the benefit of the other joint plaintiffs, Harris and Smith's estate.
 
 
 40
 Finally, at the time this case was argued and decided Rule 21(6) of the Revised Rules of the Supreme Court was in effect. Under this rule a petition for certiorari by one party is presumptively for the benefit of all the other parties.[30] The Revised Rules were adopted by the Supreme Court on June 12, 1967 and became effective on October 2, 1967, approximately ten months after the petition for certiorari was filed on November 28, 1966, but prior to the argument in the Supreme Court on November 6-7, 1967, and, of course, prior to its decision on January 29, 1968. Rule 62 of the Revised Rules was intended to make them effective in pending cases in which certiorari had already been granted.[31]
 
 
 41
 Accordingly, we would construe Rule 21(6) as bringing on the Supreme Court record as parties Harris and Smith's estate, who had throughout this litigation been joined with Lynch's estate as plaintiffs.
 
 
 42
 We conclude therefore that Harris and Smith's estate are before us equally with Lynch's estate under the Supreme Court's mandate.
 
 V.
 THE JUDGMENT
 
 43
 The fundamental problem created by Dutcher's nonjoinder as a party was whether the jury's verdict that Lumbermens' policy covered Cionci could be preserved despite Dutcher's absence.
 
 
 44
 Manifestly the combined recoveries against Cionci's estate and Dutcher might not exceed the policy limit. In that event, Dutcher would not suffer any injury by a decree that Lumbermens will be liable for all judgments obtained against Cionci. On the other hand, in the event the combined recoveries against Cionci's estate and Dutcher should exceed the policy limits and so bring their interest into collision, it would become necessary to decide whether Dutcher is free to litigate the issue whether Cionci was driving with his permission at the time of the accident. Meanwhile, a race to collect against the fund can readily be guarded against by a provision in the decree that Lumbermens shall not be required to make any payment under the policy until Dutcher has had an opportunity to present any claims he may have under it as a result of the determination of the state court actions.
 
 
 45
 Dutcher's claim that as a nonparty he is not estopped by the judgments against Lumbermens from litigating the issue of his rights under the policy as against Cionci's, may be met by the argument which the Supreme Court suggested but on which it did not intimate an opinion, that Dutcher should be bound because he bypassed the opportunity to intervene. (See 390 U.S. at 114, 88 S.Ct. at 733).
 
 
 46
 We need not now decide whether Dutcher as a nonparty is estopped by the judgments against Lumbermens from litigating the issue of Cionci's coverage, or is bound by the judgments because he bypassed the opportunity to intervene. For the significant fact is that the total amount of the combined judgments against Cionci and Dutcher has not yet been determined, nor, indeed, has it been decided whether there is any liability by Dutcher to the plaintiffs. It is only if Dutcher is held liable to the plaintiffs and such liability when added to that of Cionci exceeds the policy limit, that Dutcher's and Cionci's claims of coverage will collide. We believe it undesirable to decide any of these questions now. The record has not yet been fully written, the questions were not presented to the district court and they may ultimately be made moot by the outcome of the state court trials.
 
 
 47
 There is, moreover, another element which may affect the ultimate terms of the declaratory judgment decree. At the argument before the Supreme Court counsel for the plaintiffs, in the words of Mr. Justice Harlan, "represented orally that they * * * would accept a limitation of all claims to the amount of the insurance policy" (390 U.S. at 115-116, 88 S.Ct. at 741), which was disclosed to the Supreme Court as $100,000.
 
 
 48
 The Supreme Court in concluding its opinion directed that in the event we should affirm the district court on the issues we had not previously considered, we should make "appropriate disposition preserving the judgment of the District Court and protecting the interests of nonjoined persons." (390 U.S. at 128, 88 S.Ct. at 747). We shall therefore remand the case to the district court for further proceedings. The district court should afford plaintiffs an opportunity to agree to the limitation to the policy limit of all their claims against the policy, whether arising out of judgments against Cionci or against Dutcher. If no such limitation is fixed, the district court should expressly stay any execution by virtue of the declaratory judgment decree until Dutcher shall have had a full opportunity either in the court below or in the state courts to present any claims he may have to the protection of Lumbermens' policy if any judgment is rendered against him in any of the now pending state court actions.
 
 
 49
 The judgment of the district court will be vacated and the cause will be remanded with direction to modify the declaratory judgment decree in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 For simplicity, the name of the personal representative of a decedent will be omitted
 
 
 [2]
 Civil Action No. 25149
 
 
 [3]
 The clause insures "any other person [than the owner] using such automobile, provided the actual use thereof is with the permission of the named insured * * *."
 
 
 [4]
 The Act is quoted infra, n. 6
 
 
 [5]
 See, e.g., Exner v. Safeco Ins. Co. of America, 402 Pa. 473, 477, 167 A.2d 703, 704 (1961); Waters v. New Amsterdam Casualty Co., 393 Pa. 247, 252-253, 144 A.2d 354, 356 (1958)
 
 
 [6]
 The Act of May 23, 1887, P.L. 158, § 5(e), 28 Purdon's Pa.Stat.Annot. § 322, provides:
 "Nor, where any party to a thing or contract in action is dead, * * * and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased * * *, be a competent witness to any matter occurring before the death of said party * * *."
 
 
 [7]
 Dennick Adm'x v. Scheiwer, 381 Pa. 200, 113 A.2d 318 (1955)
 
 
 [8]
 Act of April 15, 1851, P.L. 669, § 19, 12 Purdon's Pa.Stat.Annot. § 1601; Act of April 26, 1855, P.L. 309, § 1 as amended, 12 Purdon's Pa.Stat.Annot. § 1602
 
 
 [9]
 P.L. 512, § 601, 20 Purdon's Pa.Stat. Annot. § 320.601
 
 
 [10]
 Dennick Adm'x v. Scheiwer, 381 Pa. 200, 113 A.2d 318 (1955)
 
 
 [11]
 See the classic study, Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1 (1942)
 
 
 [12]
 "The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. * * * He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. * * * There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation." 19 Cal.2d at 811-812, 122 P.2d at 894. See Coca-Cola Co. v. Pepsi-Cola Co., 6 W.W.Harr. 124, 36 Del. 124, 172 A. 260 (Del.Super.1934)
 
 
 [13]
 See Postal Telegraph Cable Co. v. City of Newport, 247 U.S. 464, 476, 38 S.Ct. 566, 62 L.Ed. 1215 (1918); Provident Tradesmens Bank and Trust Co., Administrator v. Patterson, Administrator, 390 U.S. 102, 110, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968)
 
 
 [14]
 See supra, note 11
 
 
 [15]
 See, e.g., B. R. DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967)
 
 
 [16]
 Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281 (1957)
 
 
 [17]
 For discussion of this problem see Currie, supra at p. 308. For the railroad or airplane accident cases Currie suggests that mutuality should be required because of the injustice to the defendant faced with many successive suits. See also Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944 (2 Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964), in which Judge Friendly found that the defense in the first suit was diligent and adequate and therefore applied collateral estoppel notwithstanding the absence of mutuality. Cf. Berner v. British Commonwealth Pac. Airlines, Ltd., 346 F.2d 532 (2 Cir. 1965). To the same effect asZdanok is Graves v. Associated Transport, Inc., 344 F.2d 894 (4 Cir. 1965). See also United States v. United Airlines, Inc., 216 F.Supp. 709, 725-729 (D. Nev.1962), affirmed on this point, United Air Lines, Inc. v. Wiener, 335 F.2d 379, 404-405 (9 Cir. 1964), cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964).
 
 
 [18]
 Adoption of this standard might require an examination in each case of the factual question whether the party sought to be estopped had a "full and fair" opportunity to litigate the issue effectively. See Semmel, Collateral Estoppel, Mutuality and Joinder of Parties, 68 Colum.L.Rev. 1457, 1468-71 (1968)
 
 
 [19]
 See Semmel, supra, at p. 1457
 
 
 [20]
 See Semmel, supra, pp. 1471 et seq
 
 
 [21]
 Hartmann v. Time, Inc., 166 F.2d 127, 138, 1 A.L.R.2d 370 (3 Cir. 1947), cert. denied 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948). See also Wright, Federal Courts, ch. 9 (1963)
 
 
 [22]
 See, e.g., Restatement of Judgments, § 93 (1942)
 
 
 [23]
 421 Pa. at 25, 218 A.2d at 352
 
 
 [24]
 CompareBruszewski, supra, 181 F.2d at 421 n. 2, where it was noted that Bruszewski had sustained a single injury from a single cause and therefore might have consolidated his claims against the two defendants in one suit rather than have brought separate suits as he did. Judge Hastie said: "While the claimant was not obliged thus to consolidate his suits, no canon of fairness requires that he be given the special advantage of twice trying the same issue where he did not elect to join them."
 
 
 [25]
 See Exner v. Safeco Insurance Co. of America, 402 Pa. 473, 477-478, 167 A.2d 703, 705 (1961); Waters v. New Amsterdam Casualty Co., 393 Pa. 247, 252-253, 144 A.2d 354, 356 (1958)
 
 
 [26]
 "First, if you do not believe Mr. Dutcher at all, if there is no credible testimony, Mr. Harris has the presumption operating in his favor and you would then have to conclude that Mr. Cionci was driving with Mr. Dutcher's permission
 "But if you determine that Mr. Dutcher is credible, believable, that the testimony which he gave is worthy of belief by you, then you must consider just precisely what it was that he said. What permission did he grant?
 "There was testimony, as I recall, from Mr. Dutcher that Lynch and Cionci indicated they wanted to go to Ardmore, perhaps a mile or two away from Bryn Mawr, to pay a bill, or something to that effect. It is for you to determine and to recall precisely what the testimony was.
 "If Mr. Dutcher gave permission only to go to Ardmore and return, and Cionci drove to Media, I think that we would all agree that, when you look at this map, that goes beyond what you would call a minor deviation from the permission, because of the distance that is involved.
 "There is also a possibility that Mr. Dutcher's permission was limited in space, destination and return being Ardmore, as he testified at one point, or possibly it was limited as to time. As I recall, he indicated he provided that they would be back in a half hour. Then there was some other questioning of him which seemed to indicate that perhaps a couple of hours might have been involved. But this is all for you to recall precisely what the testimony was.
 "The thing that you must consider is whether Mr. Dutcher's testimony is credible and, if you determine that it is credible, you will have to interpret precisely what permission he gave to Cionci to drive this car and whether that permission was exceeded. If the permission was exceeded, then you must find in favor of the defendant."
 
 
 [27]
 See Exner v. Safeco Insurance Co. of America, 402 Pa. at 478, 167 A.2d at 705
 
 
 [28]
 See our old Rule 36
 
 
 [29]
 No. 14589
 
 
 [30]
 Rule 21(6) provides:
 "All parties to the proceeding in the court whose judgment is sought to be reviewed shall be deemed parties in this court, unless the petitioner shall notify the clerk of this court in writing of his belief that one or more of the parties below have no interest in the outcome of the petition. . . . All parties other than the petitioner shall be respondents, but respondents who support the position of the petitioner shall meet the time schedule for filing papers which is provided for the petitioner. . . ."
 
 
 [31]
 Rule 62 provides:
 "The amended rules adopted on June 12, 1967, shall become effective on October 2, 1967, except that with respect to cases granted review prior to that date, the time limits for briefs and the provisions regarding the printing of records shall continue to be governed by the rules as they were before amendment."
 
 
 
 50
 GANEY, Circuit Judge (concurring).
 
 
 51
 I am in agreement with the result reached in this case, in that, in my judgment, it is appropriate for the application of the doctrine of collateral estoppel, since Dutcher testified fully in the case of Harris v. Lumbermens and Estate of Cionci, and the jury therein found in favor of Harris, as more fully discussed in the opinion of Judge Freedman.
 
 
 52
 However, there was some question in my mind of the possibility of prejudicial error in the trial of the case, and, especially, in the court's charge where it specifically directed, at the very outset thereof, that the jury should return a directed verdict in favor of the estates of John R. Lynch and Thomas W. Smith, its authority therefor being the application of the Pennsylvania Dead Man's Act, Act of May 23, 1887, P.L. 158, § 5(e), 28 Purdon's Pa.Stat.Annot. § 322. I had some misgivings, in view of the court's action, for the reason that the impress of their recovery, under the circumstance here, might have carried over into the case of Harris in such a closely knit factual area, in spite of the fact that the jury was told it should not consider the testimony of Dutcher as to these estates. It was a most difficult case, as the court pointed out twice in its charge, and was not the ordinary situation, as it required the jury to make compartmental decisions, with respect to the facts, involving the application of a difficult legal question.
 
 
 53
 In my judgment, the better practice here would have been, in order to avoid even the semblance of unfairness as to Lumbermens, to have said nothing to the jury about their directing verdicts in the Smith and Lynch cases, but simply, sua sponte, at the close of its charge, to merely have directed verdicts in their favor, pursuant to the last sentence of Rule 50 (a) of the Federal Rules of Civil Procedure, which provides: "The order of the court granting a motion for a directed verdict is effective without any assent of the jury."
 
 
 54
 However, while I am inclined to believe error crept into the charge, yet there is much to be said for it, considering its totality in this respect, and, additionally, since there was no objection by counsel to the court's charge on this ground, I do not consider it plain error under Rule 51 of the Federal Rules of Civil Procedure.
 
 
 55
 KALODNER, Circuit Judge (dissenting).
 
 
 56
 I would reverse the judgment of the District Court with directions to grant a new trial for these reasons:
 
 
 57
 The District Court erred (1) in ruling that the Pennsylvania Dead Man's Act, 28 P.S. § 322, rendered Dutcher incompetent as a witness against the Lynch and Smith estates; and (2) in its instructions in the Harris trial on the score of deviation.
 
 
 58
 In order to bring into focus the issue stated, this factual statement of the situation which gave rise to them must be made.
 
 
 59
 The instant declaratory judgment proceeding was brought by Lynch's Estate[1] to determine whether the coverage of a public liability policy issued by the defendant, Lumbermens Mutual Casualty Company, to an owner of an automobile, one Edward S. Dutcher, extended to the deceased Donald Cionci, who was driving the car at the time of an accident. The policy by its terms extended its coverage to any person operating Dutcher's automobile with his permission at the time of the accident. The critical fact issue to be determined was whether the automobile was being operated by Cionci, within the scope of the permission granted to him by Dutcher when the accident occurred.
 
 
 60
 Cionci was killed when the automobile collided with a truck driven by one Smith, who was also killed. Lynch and Harris were riding in the Cionci car at the time of the accident. Lynch was killed; Harris was injured.
 
 
 61
 Lynch's estate then sued Cionci's estate in the District Court for the Eastern District of Pennsylvania in Civil Action No. 25149, seeking damages under the Pennsylvania Wrongful Death and Survival Statutes. The defendant insurance company refused to defend Cionci's estate on the ground that he had deviated beyond the use authorized by Dutcher, viz., to drive from Bryn Mawr to Ardmore, some two miles southeast, provided he return in half an hour, whereas Cionci had instead driven some twelve miles in an opposite direction to Media. Lynch's estate obtained a default judgment against the Cionci estate and then brought this declaratory judgment action against the insurance company. Damages allowed on the judgment were subsequently fixed at $50,000. Smith's estate, which had brought suit against Dutcher and the Cionci and Lynch estates, in the Common Pleas Court of Delaware County, Pennsylvania, and Harris who had sued all three in the Delaware County Court, were joined as parties in the instant declaratory judgment action on Lumbermens' motion. Dutcher was not joined.
 
 
 62
 At the trial in the instant declaratory judgment action the District Court ruled that Dutcher was incompetent to testify with reference to the scope of permission granted to use his car under the Pennsylvania Dead Man's Act, 28 P.S. 322, as far as the Lynch and Smith estates were concerned, on the ground that his interest was adverse to that of the two estates because the coverage of the policy was limited and he had an interest in maintaining its coverage for his own protection in view of the pending actions against him in the state court. The District Court then directed verdicts in favor of the Cionci and Lynch estates since no evidence had been introduced to rebut the Pennsylvania presumption that one who operates a borrowed automobile does so within the scope of his permissive use. Dutcher was, however, permitted to testify in the Harris phase of the trial, and the jury found that Cionci had not deviated from his permitted use of the automobile.
 
 
 63
 It may be here noted, parenthetically, that our brother Van Dusen, then a District Court Judge, in the pre-trial stages of the instant action, specifically held that the Pennsylvania Dead Man's Rule did not preclude Dutcher's testimony against the Lynch and Smith estates.
 
 
 64
 On this appeal, Lumbermens, as earlier stated, contends that the trial judge erred (1) in ruling that Dutcher was incompetent under the Pennsylvania Dead Man's Act as a witness against the Cionci and Lynch estates and in directing verdicts in favor of the Lynch and Smith estates, and (2) in its instructions on the score of deviation in the Harris phase of the trial, and (3) "that it was impossible for the jury to consider the Harris case impartially when it had been directed to find against Lumbermens in the Lynch and Cionci cases."
 
 
 65
 The District Court erred, and the majority should have held that it did, in ruling that Dutcher, under the Pennsylvania Dead Man's Act, was incompetent as a witness against the Lynch and Smith estates.
 
 
 66
 The Dead Man's Act provides in relevant part as follows:
 
 
 67
 "Nor, where any party to a thing or contract in action is dead, * * * and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to any such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased * * *, be a competent witness to any matter occurring before the death of said party * * *." 28 P.S. § 322
 
 
 68
 It is settled law in Pennsylvania that the Dead Man's Act does not render a witness incompetent in an action under the state's Wrongful Death Act,[2] "for the reason that the action of wrongful death is not for damages sustained by the decedent but for damages sustained by the plaintiff by reason of the decedent's death." Dennick, Adm'x v. Scheiwer, 381 Pa. 200, 201, 113 A.2d 318, 319 (1955).
 
 
 69
 The holding in Dennick reaffirms a prior decision to the same effect in Mann v. Weiand, 81½ Pa. 243 (1875) where it was held that the trial court erred in ruling a witness incompetent in an action for wrongful death. In so holding the Pennsylvania Supreme Court said at pages 256-257:
 
 
 70
 "This action, however, was not brought by him [the decedent], nor is it for the recovery of damages for injuries he sustained; but it is for injuries his wife sustained by his death. It is for a cause of action her husband never had. It arose on and after his death, and accrued to his widow."
 
 
 71
 It is also settled in Pennsylvania that where an action under the state's Survival Act[3] for the enforcement of a right inuring to the decedent, is joined with one under the Wrongful Death Act, a witness remains competent even though he would have been incompetent to testify in the Survival Act, action had it been separately brought. Dennick, Adm'x v. Scheiwer, supra; Alinkoff v. McDonald, 33 Pa.D. & C.2d 715, 717 (C. P. Luzerne Co. 1964).
 
 
 72
 Here, the Provident Tradesmens Bank & Trust Co., administrator of the Estate of Lynch, in Civil Action No. 25149, sued the Cionci estate, under both the Wrongful Death and Survival Acts.[4] Further, in the District Court's order in Civil Action 25149 which approved the $50,000 settlement of the default judgment therein, it was specifically stated that "two-fifths of any amounts received under the terms of such settlement shall be allocated recovery under the Wrongful Death Act. * * *"
 
 
 73
 The record in the instant case also discloses that the Smith estate's action in the state court against Dutcher, and the Lynch and Cionci estates, was under the Wrongful Death Act, and consequently Dutcher was competent to testify as far as the Smith estate was concerned in this proceeding under Pennsylvania law.[5]
 
 
 74
 The foregoing establishes that the District Court erred in ruling that Dutcher was incompetent[6] and in its further instruction to the jury to return directed verdicts in favor of the Lynch and Smith estates in the absence of testimony rebutting the Pennsylvania presumption that one is driving another's car within the scope of permitted use.
 
 
 75
 That these directed verdicts had a prejudicial effect in the jury's finding in the Harris phase of the trial that Cionci was driving within the scope of Dutcher's permission is too evident to require further statement.
 
 
 76
 The majority further errs in its holding that the District Court did not err in its charge to the jury in the Harris phase of the trial.
 
 
 77
 I hold to the view that prejudicial error was committed by the District Court in its charge on the score of the critical issue of deviation for these reasons:
 
 
 78
 While Dutcher was ruled to be incompetent as a witness in the Cionci and Lynch phases of the trial under the Pennsylvania Dead Man's Rule, he was permitted to testify in the Harris phase with respect to the use of his automobile. Dutcher was per force the only witness who could give testimony on the score of this permission since Cionci and Lynch had been killed in the accident and Harris had not been present when it was granted.[7]
 
 
 79
 Dutcher's testimony on the score of permission may be summarized as follows:
 
 
 80
 He by chance happened to encounter Cionci and Lynch in a tavern in Bryn Mawr when he dropped in to "have a beer" in mid-afternoon January 17, 1958; he had known the two men for some eight to ten years; they asked his permission to use his car to drive to Ardmore, some two miles southeast, "to pay a bill"; Dutcher granted the permission requested subject to the condition that they return in half an hour; he did not give them general permission to use the car as they pleased or for as long as they pleased but only to go to Ardmore and return in half an hour; he waited for an "hour or more" for Cionci and Lynch to return and when they failed to do so he "got a ride home" and then "went back to wait for them"; he didn't see the car until the day after the accident.
 
 
 81
 Lumbermens' defense at the Harris trial was that Cionci's use of the Dutcher car to go to Media instead of Ardmore constituted a substantial deviation from the permission granted; that he was consequently operating the car without permission and accordingly the coverage of the policy was not available to Cionci. It submitted to the District Court a point for charge embodying this defense which was denied, and an exception noted.
 
 
 82
 The District Court charged the jury as follows with respect to the critical issue of deviation:
 
 
 83
 "If Mr. Dutcher gave permission only to go to Ardmore and return, and Cionci drove to Media, I think that we would all agree that, when you look at this map, that goes beyond what you would call a minor deviation from the permission, because of the distance that is involved.
 
 
 84
 "There is also a possibility that Mr. Dutcher's permission was limited in space, destination and return being Ardmore, as he testified at one point, or possibly it was limited as to time. As I recall, he indicated he provided that they would be back in a half hour. Then there was some other questioning of him which seemed to indicate that perhaps a couple of hours might have been involved. But this is all for you to recall precisely what the testimony was.
 
 
 85
 "The thing that you must consider is whether Mr. Dutcher's testimony is credible and, if you determine that it is credible, you will have to interpret precisely what permission he gave to Cionci to drive this car and whether that permission was exceeded. If the permission was exceeded, then you must find in favor of the defendant." (emphasis supplied)
 
 
 86
 I am of the opinion that the District Court committed prejudicial error in instructing the jury that it might find that the permission to use the car was for "perhaps a couple of hours". There wasn't an iota of evidence on which such an instruction might be premised or justified. Dutcher specifically stated that the permission was limited to a half hour to travel to Ardmore and return. His testimony that he waited for an "hour or more" for the return of his car couldn't possibly be construed as permission to use the car for "a couple of hours." This Court has held that it is prejudicial error to submit an issue to a jury "on which there was no evidence". O'Neill v. Reading Company, 306 F.2d 204, 206 (3 Cir. 1962). We there ruled that the trial judge committed prejudicial error when he instructed the jury that it might find the plaintiff driver of an automobile guilty of contributory negligence if he was unable to see an approaching train because of frost on the side windows of his car, when there was no evidence of frost on the windows. We recently applied the principle stated in O'Neill v. Reading Company, supra, in Freifield v. Hennessy, 353 F.2d 97 (3 Cir. 1965) and Eichmann v. Dennis, 347 F.2d 978, 981 (3 Cir. 1965).
 
 
 87
 The majority's view that the District Court remedied its error in instructing the jury that it might find that permission had been granted to use the car "for perhaps a couple of hours", without limitation as to the trip to Ardmore and return to Bryn Mawr, when it later told the jury that it was their recollection of the testimony which was to govern, begs the question of error.
 
 
 88
 This must be added to what has been said. The majority avoids deciding whether the District Court erred in ruling Dutcher incompetent as to the two estates by holding that since Dutcher was permitted to testify as to Harris, Lumbermens is now estopped from litigating the issue of permission with respect to the two estates. I disagree.
 
 
 89
 Pennsylvania law governs the scope of collateral estoppel in the instant case. Gramm v. Lincoln, 257 F.2d 250, 255 (9 Cir. 1958); Hartmann v. Time, Inc., 166 F.2d 127, 138, 1 A.L.R.2d 370 (3 Cir. 1947), cert. den. 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948); Cobb v. Clark, 257 F.Supp. 175 (M.D.N.C.1966), aff'd per curiam, 375 F.2d 773 (4 Cir. 1967). See also Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 308 U.S. 530, 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 447, 537 (1940). Thus, the majority's motions as to the better rule of law, and decisions applying the law of jurisdictions other than Pennsylvania, are of secondary value, since our function is to determine what the Pennsylvania Supreme Court would hold if it were now faced with the identical problem. Just as with the Pennsylvania Dead Man's Statute, we cannot apply the "more liberal" rule or the "modern" rule unless Pennsylvania decisional law convinces us that the Pennsylvania Supreme Court would do likewise. Our problem here is not resolved by non-Pennsylvania decisions applying collateral estoppel in factual situations analogous to that presented in the instant case. While the one "fair and full opportunity to litigate" rationale of the majority has been accepted in a few opinions, a review of the Pennsylvania cases discloses that this is not the rule applied by the Pennsylvania courts.
 
 
 90
 A long line of Pennsylvania Supreme Court cases has firmly established the mutuality doctrine as part of the law of Pennsylvania. See, e. g., Shulze's Appeal, 1 Pa. 251 (1845); Chandler's Appeal, 100 Pa. 262 (1882); Walker v. City of Philadelphia, 195 Pa. 168, 45 A. 657 (1900); Woodburn v. Pennsylvania R.R. Co., 294 Pa. 174, 144 A. 93 (1928); Evans v. Moffat, 388 Pa. 559, 131 A.2d 141 (1957); 20 Pennsylvania Law Encyclopedia, Judgment §§ 311-313. This obviously does not mean that only those formally a party to a judgment are bound by it. Privies of parties are, of course, bound. See, e. g., American Surety Company v. Dickson, 345 Pa. 328, 28 A.2d 316 (1942); Stevenson v. Silverman, 417 Pa. 187, 208 A.2d 786 (1965), cert. den. 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76. Moreover, the addition of new parties in the second suit does not automatically defeat the application of res judicata or collateral estoppel. See, e. g., Hochman v. Mortgage Finance Corporation, 289 Pa. 260, 137 A. 252 (1927); Helmig v. Rockwell Mfg. Co., 389 Pa. 21, 131 A.2d 622 (1957), cert. den. 355 U.S. 832, 78 S.Ct. 46, 2 L.Ed.2d 44. Also, the Pennsylvania courts have expressly recognized certain limited exceptions to the rule requiring mutuality. See, e. g., Brobston v. Darby Borough, 290 Pa. 331, 138 A. 849 (1927) (collateral estoppel where same plaintiff brings suit against a defendant whose liability arises from the alleged wrongful act of another who has been exonerated in a prior suit); Helmig v. Rockwell Mfg. Co., supra (same); Hurtt v. Stirone, 416 Pa. 493, 206 A.2d 624 (1965), cert. den. 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684 (plaintiff allowed to use jury verdict that defendant guilty of crime of extortion). In no decision, however, has the Pennsylvania Supreme Court indicated that it is now prepared to abandon the requirement of mutuality or to make an exception to the rule applicable to the instant case. In determining the limits of the doctrine of mutuality, the Pennsylvania courts have considered whether the one against whom the judgment is used has in fact litigated the issues in an earlier action, but they have never held that merely because a party has litigated the issues in a prior action, he is barred from litigating them anew against one not bound by the prior judgment. The Pennsylvania cases in the field show that whatever might be this Court's view of the "modern" rule, the Pennsylvania courts still adhere to the doctrine of mutuality and have made no exception applicable to the situation presented in the instant case. This view is reinforced by the heavy reliance the Pennsylvania courts have placed on the Restatement of Judgments since it was first published. The Restatement sections relating to mutuality certainly do not permit the estates of Smith and Lynch to utilize the verdict and judgment in favor of Harris.
 
 
 91
 The one Pennsylvania case relied upon by the majority is Posternack v. American Casualty Co., 421 Pa. 21, 218 A.2d 350 (1966). In that case plaintiff, who suffered fire loss when a building owned by him was destroyed by fire, brought separate suits against two insurance companies, American Insurance Company of New Jersey (American) and American Casualty Company of Reading (Reading), each of which had issued fire insurance policies allegedly covering the loss. The policies had been obtained by plaintiff at the same time and from the same broker.
 
 
 92
 The action against American was brought in the United States District Court for the Eastern District of Pennsylvania, while that against Reading was brought in the Court of Common Pleas No. 1 for Philadelphia County. In both actions the same defenses were interposed — non-issuance of the policies, lack of authority by the broker, failure of the broker to have a state broker's license, fraudulent representation by plaintiff, and issuance of the policy after the fire. The action against American came to trial first and resulted in verdict and judgment for the insurance company.
 
 
 93
 Reading then moved in the Pennsylvania state proceeding for leave to amend its answer to include the defense of res judicata and collateral estoppel. This motion was denied by the trial court, but the Pennsylvania Supreme Court reversed, stating that the insurance company should be allowed to assert the defense, but that whether collateral estoppel would be applicable would depend upon the particular facts revealed at trial:
 
 
 94
 "The lower court denied the amendment solely because of the absence of mutuality of estoppel. While it is true * * * that an amendment showing an error of law on its face should not be allowed, we are not convinced that such an error is patently evident here. "The Pennsylvania rule on mutuality of estoppel is by no means so rigid that the mere mention of it, without more, will defeat the right to assert res judicata as a defense in an amendment to the pleadings. Several recent cases have recognized exceptions to the general rule. * * * Helmig v. Rockwell Mfg. Co. * * * Stevenson v. Silverman * * * and Hurtt v. Stirone * * * are other cases evidencing exceptions, thus showing a tendency by this Court, at least in limited areas, not to allow the technical formalities of res judicata to stand in the way of justice.
 
 
 95
 "On the posture of the present record, it is far from clear whether or not the doctrine of res judicata should be applied. Certainly, the question is not so open and shut as to now permit its determination as a matter of law. * * *" 421 Pa. at 25, 218 A.2d at 352.
 
 
 96
 While the opinion does indeed indicate that in a proper case one not a party or privy may benefit from a prior judgment, as noted earlier, the Pennsylvania rule requiring mutuality is not an absolute one. If either insurance company were held liable, it would probably have a suit over against the other for a pro rata share of the judgment, based on the provisions of the policies. In view of this, defensive use of the first judgment in Posternack might well have come within one of the best established exceptions to the mutuality doctrine — that providing that an indemnitee can use as a defense a judgment in favor of the indemnitor. Thus, it is no help to the majority position that the Pennsylvania Supreme Court should hold that lack of mutuality, standing alone, is not enough to keep a party from pleading res judicata as a defense.
 
 
 97
 The majority here resorts to an offensive use of the doctrine, as the text writers class it. It is true that such a use has been approved in three cases cited by the majority — Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944 (2 Cir. 1964), cert. den. 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298; United States v. United Airlines, Inc., 216 F.Supp. 709 (D.Nev.1962), aff'd United Air Lines, Inc. v. Wiener, 335 F. 2d 379 (9 Cir. 1964), petition for cert. dismissed, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549; and B. R. DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967).[8] Apart from the fact that in my view these cases were wrongly decided,[9] it must be noted that in Zdanok, the defendant, who was the real and primary party in interest, was specifically found by the Court to have "had a full and fair opportunity to litigate the issue effectively", a consideration absent here by reason of the District Court's erroneous ruling that Dutcher was incompetent to testify against the plaintiff Lynch and Smith estates and the resulting directed verdicts in favor of these estates.[10]
 
 
 98
 Our cases of Bruszewski v. United States, 181 F.2d 419 (3 Cir. 1950), cert. den. 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632, and Makariw v. Rinard, 336 F.2d 333 (3 Cir. 1964) do not support the majority's application of collateral estoppel here. In Bruszewski, it was held that judgment against the plaintiff in a prior suit against the Isthmian Steamship Company was res adjudicata with respect to his second suit against the United States which owned the vessel operated by the steamship company.
 
 
 99
 In Makariw we held that neither res adjudicata nor collateral estoppel barred the plaintiff's recovery because the defendant, in a prior action, arising out of the same accident, had recovered against the employer of the plaintiff's decedent on the finding that the decedent had been guilty of negligence. We did so on the ground that the plaintiff, the decedent's administratrix, had not had her day in court. The premise of the majority's theory is that the doctrine is applicable here because "The primary adversaries, therefore, were Cionci's estate and Lumbermens, and it was through Cionci's estate, which was a named party, that the plaintiffs, including Harris, claimed."
 
 
 100
 The hard and inescapable fact is that the real and primary adversaries are Cionci's estate, all the plaintiffs and the absent Dutcher. It is Cionci's estate which seeks the coverage of Dutcher's policy in conflict with Dutcher's interest, and the plaintiffs who similarly look to that coverage to pay any claims recovered against Cionci's estate, in similar conflict with Dutcher's interest.
 
 
 101
 It is manifestly unfair to apply the doctrine of collateral estoppel in the situation stated, in a maneuver to avoid deciding an issue which is critical on this appeal and of vital impact on the real and primary adversaries.
 
 
 
 Notes:
 
 
 [1]
 For simplicity, the name of the representative of a decedent's estate is omitted
 
 
 [2]
 12 P.S. §§ 1601, 1602. The statute provides that specified relatives of one whose death has been wrongfully caused by unlawful violence or negligence shall be entitled to recover damages for any injuries causing death, and in the event none of the specified relatives survive the decedent, then the personal representative shall be entitled to recover certain enumerated damages, viz., hospital, nursing, medical expenses and expenses of administration
 
 
 [3]
 20 P.S. § 320.601
 
 
 [4]
 The instant declaratory judgment act proceeding is the outcome of Civil Action 25149
 
 
 [5]
 That appears from the affidavit of L. C. Pirrung, Jr. which states: "Sarah B. Smith, Administratix of the Estate of Thomas W. Smith, Deceased, instituted suit in the Court of Common Pleas of Delaware County at December Term 1959, No. 1047 to recover damages for the alleged wrongful death of the said Thomas W. Smith, Deceased."
 
 
 [6]
 The majority has inexplicably and arbitrarily refused to apply the cited Pennsylvania decisions holding that the Pennsylvania Dead Man's Act does not render a witness incompetent in a wrongful death action or in instances where a survival action is joined with a wrongful death action, as here
 
 
 [7]
 Harris had been picked up by Cionci and Lynch in Media to which they had proceeded after obtaining use of Dutcher's car. The accident happened on the way back to Bryn Mawr from Media
 
 
 [8]
 Graves v. Associated Transport, Inc., 344 F.2d 894 (4 Cir. 1965), also cited by the majority, is clearly not a case of offensive or affirmative collateral estoppel. There an unsuccessful defendant in a prior suit was estopped from relitigating the same issue when he became a plaintiff in a second suit. Berner v. British Commonwealth Pacific Airlines, Ltd., 346 F.2d 532 (2 Cir. 1965), cited in note 17 of the majority opinion, denied plaintiff offensive use of collateral estoppel in an airline accident case
 
 
 [9]
 See the criticism in 64 Colum.L.Rev. 1141 (1964) of theZdanok case.
 
 
 [10]
 Likewise, inDeWitt the majority expressly stated that defendant offered "no reason for not holding him to the determination in the first action"; that it was "unquestioned (and probably unquestionable) that the first action was defended with full vigor and opportunity to be heard"; and that the plaintiff in the second action, the owner of the vehicle involved in a collision, derived his right of action from the plaintiff who won in the first action, the driver of the vehicle. 278 N.Y.S.2d at 601, 225 N.E.2d at 199.